# 25-487-cv

## United States Court of Appeals

*for the*

## Second Circuit

ANGELICA PARKER,

*Plaintiff-Appellant,*

— v. —

TAL ALEXANDER, ALON ALEXANDER, OREN ALEXANDER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

MICHAEL J. WILLEMIN
BROOKE PAYTON
WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

CP COUNSEL PRESS     (800) 4-APPEAL • (380631)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE ISSUES PRESENTED .......................................3

STATEMENT OF THE CASE...............................................................3

    I.     FACTUAL BACKGROUND .....................................................3

    II.    SUMMARY OF CLAIMS AND PROCEDURAL HISTORY ...........4

SUMMARY OF THE ARGUMENT ......................................................5

STANDARD OF REVIEW ..................................................................8

ARGUMENT ....................................................................................9

    I.     THE PASSAGE AND PURPOSE OF THE LAWS AT
         ISSUE.................................................................................9

         A.    The CVA and ASA .....................................................9

         B.    The VGMVPL.............................................................11

         C.    The Hoylman-Sigal Affidavit .....................................13

    II.    LEGAL STANDARDS........................................................14

         A.    Field and Conflict Preemption ...................................14

         B.    Prior Decisions Addressing this Very Issue ...............16

             i.    Field Preemption.............................................16

             ii.   Conflict Preemption.........................................18

    III.   THE DISTRICT COURT ERRED IN FINDING THAT THE
         VGMVPL IS FIELD PREEMPTED BY THE CVA AND
         ASA ................................................................................18

    IV.   THE DISTRICT COURT ERRED IN FINDING THAT THE
         VGMVPL IS CONFLICT PREEMPTED BY THE CVA
         AND ASA .........................................................................24

         A.    There Is No Conflict Preemption...............................24

B.    The District Court Erred in Finding Conflict
Preemption ...............................................................................28

V.    THE DISTRICT COURT'S CRITIQUES OF THE
DECISION IN BLACK ARE MISPLACED......................................31

CONCLUSION .........................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

1-800-Contacts, Inc. v. JAND, Inc.,
 119 F.4th 234 (2d Cir. 2024)..............................................................8

Baldwin Union Free Sch. Dist. v. County of Nassau,
 22 N.Y.3d 606 (2014) ......................................................................15

Clark v. Hanley,
 89 F.4th 78 (2d Cir. 2023)..................................................................8

Consol. Edison Co. of New York v. Town of Red Hook,
 60 N.Y.2d 99 (1983) ........................................................... 16, 17, 31

Ctr. for Indep. of Disabled v. Metro. Transportation Auth.,
 125 N.Y.S.3d 697 (1st Dep't 2020) .................................... 15, 24-25

DJL Rest. Corp. v. City of New York,
 96 N.Y.2d 91 (2001) ........................................................................19

Doe v. Black,
 No. 23 Civ. 6418 (JGLC),
 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024)...................... *passim*

Doe v. Combs,
 No. 23 Civ. 10628 (JGLC),
 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024).............................2, 16

Doe v. Gooding,
 No. 20 Civ. 6569 (PAC),
 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022) .............. 7, 22, 23, 24

Engelman v. Rofe,
 144 N.Y.S.3d 20 (1st Dep't 2021) ............................... 7, 21, 22, 23

Garcia v. New York City Dep't of Health & Mental Hygiene,
 31 N.Y.3d 601 (2018) ............................................................. 14, 15

Kane v. Mount Pleasant Central Sch. Dist.,
 80 F.4th 101 (2d Cir. 2023)................................................................8

Lansdown Entertainment Corp. v.
        New York City Dept. of Consumer Affairs,
        74 N.Y.2d 761 (1989) .............................................................. 15, 24, 25, 28

Licci ex rel. Licci v. Lebanese Canadian bank, SAL,
        739 F.3d 45 (2d Cir. 2013) ..............................................................23

McDonald v. New York City Campaign Fin. Bd.,
        40 Misc.3d 826 (Sup. Ct. N.Y. Cnty. 2013), aff'd as modified,
        117 A.D.3d 540 (1st Dep't 2014) ................................................. 26, 27, 28

New York State Club Ass'n, Inc. v. City of New York,
        69 N.Y.2d 211 (1987), aff'd, 487 U.S. 1 (1988) ............................................16

Palin v. N.Y. Times Co.,
        940 F.3d 804 (2d Cir. 2019) ............................................................8

People v. Cook,
        34 N.Y.2d 100 (1974) ....................................................................30

People v. De Jesus,
        54 N.Y.2d 465 (1981) ............................................................ 17, 25, 28, 31

People v. Judiz,
        38 N.Y.2d 529 (1976) ............................................................... 25, 26

People v. Nemadi,
        140 Misc.2d 712 (Crim. Ct. N.Y. Cnty. 1988)....................................30

People v. Torres,
        37 N.Y.3d 256 (2021) ....................................................................14

People v. Woods,
        52 Misc.3d 618 (N.Y. City Crim. Ct., May 11, 2016) ....................................26

Police Benevolent Assn. of the City of New York, Inc. v.
        City of New York,
        40 N.Y.3d 417 (2023) .......................................................... 14, 15, 19

Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead,
        933 N.Y.S.2d 388 (1st Dep't 2011),
        aff'd sub nom., Sunrise Check Cashing v. Town of Hempstead,
        20 N.Y.3d 481 (2013) ....................................................................14

United States v. Morrison,
        529 U.S. 598 (2000)......................................................................11

Vatore v. Comm'r of Consumer Affs. of City of New York,
    83 N.Y.2d 645 (1994) ............................................................ 18, 20

**Statutes & Other Authorities:**

2020 Sess. Law News of N.Y. Ch. 130 (S. 7082) (eff. Aug. 3, 2020) .......................9

2021 N.Y. S. B. 66, Comm. Rep. (Feb. 12, 2022) ........................................... 10, 29

CPLR § 214(2) ................................................................................... 21, 22

CPLR § 214-g ............................................................................. 9, 19, 25, 29

CPLR § 214-j .......................................................................... 10, 19, 25, 29

CPLR § 215(3) ............................................................................ 21, 22, 23

Fed. R. Civ. P. 12(b)(6) ..........................................................................8

Fed. R. Civ. P. 12(c) .............................................................................8

N.Y. Const. Art. IX § 2(c) ......................................................................15

N.Y. State Assembly Mem. Supp. Legislation, reprinted in N.Y. Bill
    Jacket, 2019 S. B. 2440, Ch. 11 (Jan. 29, 2019)................................9

N.Y.C. Admin. Code § 10-1102 .................................................................11

N.Y.C. Admin. Code § 10-1103 .................................................................25

N.Y.C. Admin. Code § 10-1104 .........................................................11, 12, 13, 25

N.Y.C. Admin. Code § 10-1105(a)...........................................................11, 12, 23

Nicolas J. Pappas et al., "New York Enacts Revival Statutes, Renewing
    Expired Claims for Sexual Assault," Weil, Gotshal & Manges LLP
    (Aug. 2022).......................................................................20

Sponsor Mem. Supp. Legislation, reprinted in N.Y. Bill Jacket,
    2020 S. B. 7082, Ch. 130 (Jan. 8, 2020).........................................9

## **PRELIMINARY STATEMENT**

The Victims of Gender-Motivated Violence Protection Law ("VGMVPL") was enacted to allow individuals in New York City to pursue civil claims for acts of sexual and other gender-based violence.  In 2022, the New York City Council enacted amendments to the VGMVPL that, among other things, provided a window within which victims of gender-motivated violence could file claims that would otherwise have been time-barred.  Plaintiff, taking advantage of this revival window, filed suit against Defendants, who sexually assaulted her and who are notorious for sexually assaulting and raping countless women.

Ultimately, the lower court dismissed Plaintiff's claims, holding that the revival window opened up pursuant to the aforementioned amendments was preempted by two state laws, the Adult Survivors Act ("ASA") and the Child Victims Act ("CVA").  The ASA and CVA were passed by the state legislature in 2019 and 2022, respectively.  Neither the ASA nor the CVA created any new causes of action.  Rather, they opened up revival windows for victims of sexual assault whose claims would otherwise have been time barred.

This lower court's decision is fatally flawed, as it fails to properly account for the fact that the ASA and CVA – neither of which creates a cause of action – apply only to claims involving sexual assault, whereas the VGMVPL, which is a standalone cause of action designed to protect individuals from both sexual *and*

1

*physical* acts of gender-motivated violence.  The lower court's decision also fails to persuasively explain its determination that the New York State legislature, which passed the ASA and CVA to increase access to justice for victims of sexual assault, somehow simultaneously wanted to prevent New York City from doing the same for victims of gender-based violence.  The legislative history of the statutes at issue, as well as an affidavit from one of the sponsors of the CVA, directly contradict the lower court's findings in this regard.

Only one other District Court Judge, Jessica G.L. Clarke, has addressed the preemption issue raised herein.  See Doe v. Black, No. 23 Civ. 6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024); Doe v. Combs, No. 23 Civ. 10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024) (adopting Black).  The Black decision, which is well-reasoned and supported, properly rejected the argument made by Defendants herein and adopted by the lower court.  In short, the Black decision pointed out the obvious; namely, that there is not a scintilla of evidence to suggest that, in passing the CVA and ASA, the state wanted to completely occupy "the field" as far as the statute of limitations for claims of gender-motivated violence, a category of claims that is broader than that covered by the CVA and ASA.  Moreover, Judge Clarke properly determined that there is no "head-on" collision between the CVA and ASA, and the VGMVPL.  In fact, the VGMVPL does not prohibit anything that is permitted under the CVA and ASA, and the laws

2

are not in conflict, but rather complement each other.  Simply put, there is no reasonable basis upon which to conclude that the VGMVPL is preempted, and the lower court's decision should be reversed.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether New York City's Victims of Gender-Motivated Violence Protection Law's Revival Statute ("VGMVPL") is preempted by the New York State's Adult Survivor's Act ("ASA") and Child Victims Act ("CVA").

## STATEMENT OF THE CASE

### I.      FACTUAL BACKGROUND

In 2012, Ms. Parker began a relationship with Oren Alexander and was invited to his home that he shared with his brothers, Alon and Tal.  (A-11).  Ms. Parker brought a friend with her.  Id.  After making the women drinks, Alon began to grope Ms. Parker's friend, who became uncomfortable and left.  Id.  Once Ms. Parker was alone with the brothers, she was brutally raped by Tal and Alon while Oren watched.  (A-11-12).  This was a coordinated sexual assault that was planned, facilitated and executed by Oren and his brothers.  (A-12).

This attack was not the first time that Defendant-Appellees have been accused of sexually assaulting women.  (A-9).  In fact, at the time Ms. Parker's complaint was filed, Alon and Oren Alexander were facing multiple other lawsuits,

where the brothers allegedly drugged and sexually assaulted other women in the past. (A-13).

Since the filing of Ms. Parker's complaint, more than a dozen other women have come forward to file civil cases with similar claims – that one or more of the brothers, sometimes with other men, used their wealth, power and influence to lure women in before drugging and sexually assaulting them.[1] On December 11, 2024, Tal, Oren and Alon Alexander were arrested on federal sex trafficking charges for their prolific patterns of raping women all over the United States and beyond.[2]

## II.    SUMMARY OF CLAIMS AND PROCEDURAL HISTORY

On June 18, 2024, Ms. Parker filed an action against Tal, Alon and Oren Alexander pursuant to New York City's VGMVPL. (A-8-16). Although Ms. Parker's claims would ordinarily have been time-barred because the VGMVPL has a seven-year statute of limitations, the claims were timely filed pursuant to the VGMVPL's Revival Statute, which provided a window for victims of gender-motivated violence to bring otherwise untimely claims.

On July 15, 2024, Defendant-Appellees Oren Alexander and Alon Alexander filed a motion to dismiss the Complaint, arguing that the Revival Statute was

---

[1]      See https://nypost.com/2025/01/04/us-news/accused-sex-trafficker-alon-alexander-to-remain-behind-bars/.

[2]      See https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex.

preempted by New York State law, specifically the ASA and CVA. (A-17-18). On September 25, 2024, Defendant-Appellee Tal Alexander filed a Motion for Judgment on the Pleadings, in which he made the same argument. (A-43). By Decision and Order dated January 22, 2025, the District Court granted Defendant-Appellees' motions. (A-324-339). The Court conceded that Ms. Parker stated a claim under the VGMVPL, and that the claim was timely filed pursuant to the Revival Statute. Id. However, the Court ultimately decided that the Revival Statute was preempted by New York State's ASA and CVA, and, as a result, the Revival Statute was invalid and Ms. Parker's claim was untimely. Id. The District Court entered Final Judgment on the Decision on February 4, 2025. (SPA-1). On February 28, 2025, Ms. Parker filed a timely Notice of Appeal. (A-340).

## SUMMARY OF THE ARGUMENT

In her complaint, Ms. Parker alleges that, in 2012, she was lured by Oren Alexander to his apartment, where his brothers Alon Alexander and Tal Alexander brutally raped her together, while Oren watched. (A-11). This was a coordinated sexual assault that was planned facilitated and executed by all three brothers. (A-12). In June 2024, Ms. Parker filed this lawsuit in an effort to finally find justice for the trauma she endured all those years ago. But on January 22, 2025, this District Court granted the two dispositive motions field by Oren and Alon Alexander and Tal Alexander, respectively. Importantly, the District Court

conceded both that Ms. Parker had indeed stated a valid claim and that the claim was filed timely according to the Revival Amendment. However, Judge Kaplan wrongly decided that the Revival Amendment was preempted by New York State's ASA and CVA. Thus, he determined that the Revival Amendment was invalid and Ms. Parker's claim was untimely and had to be dismissed.

The ASA and the CVA are both state laws that were passed to provide a pathway to justice for adult and child victims of sexual offenses. The VGMVPL's 2022 Amendments are local law that was passed to expand both the statute of limitations and liability for victims of gender-motivated violence, whether that violence was sexual in nature or not. While there is certainly some overlap between these statutes, there is simply no basis to find that the ASA and CVA preempt the VGMVPL – either through field preemption or conflict preemption. The state laws at issue were created for the purpose of allowing more victims of such heinous acts to seek justice, and it is therefore absurd to believe that the state was attempting to prevent localities from passing laws with a similar aim, particularly where the local law is a standalone cause of action that is more expansive than the claims impacted by the ASA and CVA.

The District Court first erred when it found that the VGMVPL was field preempted by the CVA and ASA. The CVA and ASA do not even contain stand-alone causes of action, so there is no way they could constitute a "comprehensive

regulatory scheme" as required for field preemption for many reasons, not the least of which is that there is not full overlap between the three laws. In any event, event, unlike cases in which field preemption has been found, there is not a shred of evidence that the state was attempting to create a "comprehensive regulatory scheme" in passing the CVA and ASA. In fact, the legislative history and an affidavit of one of the CVA's sponsors confirms that the state's intent was never to preempt laws that provide victims of violence *more* avenues for relief. Finally, the District Court respectfully misunderstood or ignored key caselaw that is instructive on this topic, such as <u>Engelman v. Rofe</u>, 144 N.Y.S.3d 20 (1st Dep't 2021) and <u>Doe v. Gooding</u>, No. 20 Civ. 6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022). Both <u>Engelman</u> and <u>Gooding</u> held that there was no preemption between the VGMVPL and other state laws.

The District Court next erred when it found that the VGMVPL was conflict preempted by the CVA and ASA. Simply put, there is no direct conflict between the three laws. The VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state pursuant to the ASA or CVA, and there is no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. These are three statutes that do not conflict, but rather complement each other. Moreover, even if the VGMVPL did conflict with the ASA and CVA, *which it does not*, it should still be upheld because it was passed to

address a specific local problem – gender-based violence – which the city is entitled to do pursuant to the State Constitution and relevant case law.

For these reasons and those articulated below, the District Court's decision granting Defendant-Appellees' motions to dismiss and for judgment on the pleadings should be reversed.

## STANDARD OF REVIEW

The standard of appellate review of an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is *de novo*. Kane v. Mount Pleasant Central Sch. Dist., 80 F.4th 101, 106 (2d Cir. 2023) (holding this standard is appropriate where the district court "interpret[ed] and appli[ed] . . . a statute of limitations"). The standard when reviewing an order granting a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is also *de novo*. 1-800-Contacts, Inc. v. JAND, Inc., 119 F.4th 234, 246 (2d Cir. 2024). In reviewing such an appeal, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inference in the plaintiff's favor." Clark v. Hanley, 89 F.4th 78, 90-91 (2d Cir. 2023) (quoting Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019) (internal quotations omitted).

# ARGUMENT

## I. THE PASSAGE AND PURPOSE OF THE LAWS AT ISSUE

### A. The CVA and ASA

In 2019, the New York State Legislature enacted the CVA, which revived the statute of limitations for certain civil claims in connection with specified sexual offenses in the penal codes against minors. New York Civil Practice Laws and Rules ("CPLR") § 214-g. The original revival window was open from August 14, 2019 to August 14, 2020. The Sponsor's Memorandum in support of the bill explained that "New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average." N.Y. State Assembly Mem. Supp. Legislation, reprinted in N.Y. Bill Jacket, 2019 S. B. 2440, Ch. 11 (Jan. 29, 2019). The original revival window was later extended an additional year to August 14, 2021. 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082) (eff. Aug. 3, 2020). This extension recognized that "victims of sexual abuse may not disclose for many years or even decades. It is important to provide these victims with the time they need to disclose and to provide an opportunity for recourse." Sponsor Mem. Supp. Legislation, reprinted in N.Y. Bill Jacket, 2020 S. B. 7082, Ch. 130 (Jan. 8, 2020).

In 2022, the State Legislature enacted the ASA, which revived the statute of limitations for certain civil claims in connection with specified sexual offenses in the penal code against people over 18 years of age. CPLR § 214-j. The Adult Survivors Act revival window ran from November 24, 2022 to November 24, 2023. Id. Similar to the CVA, the ASA was passed to "prospectively increase . . . statutes of limitations for a subset of sexual offenses committed against adults." 2021 N.Y. S. B. 66, Comm. Rep. (Feb. 12, 2022). The Committee Report noted that "[b]oth bills [the CVA and ASA] were predicated on the widespread recognition that New York's existing statutes of limitations were insufficient in giving survivors of these heinous crimes enough time to pursue justice." Id. State Senator Jackson, another proponent of the ASA, stated on the floor of the New York Senate:

> [W]e see child abuse survivors, young adults and older survivors, often either suppressing memories of their abuse or they are afraid to come forward right away. And by the time that adults survivors get the help that they need and finally can take action against their abusers, it's too late to do anything about it legally.

N.Y. Senate, Stenographic Record 2705 (Apr. 26, 2022). He added: "It is time to enact commonsense legislation that would do away with New York's vague statute of limitations, which denies many justice." Id. The ASA passed the New York Senate unanimously and passed the New York Assembly 140 to 3. N.Y. Sen. Bill 66, bill tracking, May 24, 2022.

10

**B.     The VGMVPL**

In 2000, the New York City Council adopted the VGMVPL in response to a

U.S. Supreme Court decision that held that "the Constitution provided no federal

cause of action by victims of gender-motivated violence against perpetrators of

offenses committed against them."  N.Y.C. Admin. Code § 10-1102; see also

United States v. Morrison, 529 U.S. 598 (2000) (holding that there is "no better

example of the police power, which the Founders undeniably left reposed in the

States and denied the central Government, than the suppression of violent crime

and vindication of its victims").  The VGMVPL created a civil cause of action for

victims of "crime[s] of violence motivated by gender."  NYC Admin. Code § 10-

1104.  At that time, the law required that a claim be asserted "within seven years

after the alleged crime of violence motivated by gender occurred."  Id. at §

1105(a).  The law provides for specific types of relief, like compensatory and

punitive damages, injunctive and declaratory relief, attorneys' fees and costs and

other remedies as a court may deem appropriate.  Id. at § 10-1104.  Ultimately in

2022, the New York City Council amended the VGMVPL.  Id.

Part of the 2022 amendments included a provision that revived claims that

were previously barred, so long as the victims in those cases filed the otherwise

barred claims between March 1, 2023 and March 1, 2025.  Id. at § 10-1105(a).

Importantly, however, the 2022 Amendment was not passed solely to extend the

statute of limitations; it also expanded potential liability from "individual" to "party," opening up liability for anyone who "commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." Id. The 2022 Amendment did not change the fact that the VGMVPL creates its own cause of action, separate and apart from any common law or other statutory claims, under which someone like Ms. Parker may bring claims. Id. at § 10-1104.

The Committee Report on the 2022 Amendment made clear that its purpose was to continue to address gender-motivated violence, both sexual *and* physical, in New York City. Committee Report of the Committee on Women and Gender Equity and the Committee on General Welfare, November 29, 2021 on Int 2372-2021 (the "2021 VGMVPL Committee Report" or "Committee Report"). The 2021 VGMVPL Committee Report provided data about the impact of the pandemic on gender-motivated violence within New York City in particular, discussed the problem of gender-motivated homicides in the city, analyzed the connection between domestic violence and homelessness and discussed the city's domestic violence shelter system, and presented other issues specific to gender-based violence within New York City. Id. The Committee Report concluded that the amendment, in addition to expanding who is liable under the statute, "would give

12

survivors of gender-motivated acts of violence more time to pursue civil actions."
<u>Id.</u>

### C.   <u>The Hoylman-Sigal Affidavit</u>

New York State Senator Brad Hoylman-Sigal ("Senator Hoylman-Sigal")
was a sponsor of both the CVA and the ASA.  (A-219).  In connection with another
matter dealing with the same preemption arguments at issue herein, <u>Doe v. Black</u>,
Senator Hoylman-Sigal submitted an affidavit on the issue of preemption.  His
affidavit offers unique insight into the legislative process, history and intent that
led to the passage of both bills, but in particular the CVA.  <u>See</u> <u>generally</u> (A-218-
225).  As is abundantly clear from Senator Hoylman-Sigal's affidavit, not only was
the CVA never intended to preempt any other laws, like the VGMVPL, but
additionally, there are recently proposed amendments to the CVA that would
eliminate completely the statute of limitations on civil claims brought pursuant to
the CVA.  (A-221).  Therefore, rather than preempting city law, the legislative
intent behind the CVA (which uses the same language as the ASA) is to provide the
broadest possible protections for sexual assault victims throughout New York,
including New York City.  (A-220) ("The plain language of the CVA [which is the
same as the ASA] makes clear that the legislative intent in August 2019 was, and
remains, not to preempt other laws.  This includes the VGMVPL, which was
enacted and in place years prior to the enactment of the CVA [or ASA].").

13

## II.  LEGAL STANDARDS

### A.  Field and Conflict Preemption

There are two types of preemption to discuss in this case: field and conflict. "Field preemption prohibits a local government from legislating in a field or area of the law where the legislature has assumed full regulatory responsibility."  Police Benevolent Assn. of the City of New York, Inc. v. City of New York, 40 N.Y.3d 417, 423 (2023) (internal quotations omitted).  An intent to fully occupy a field "can be implied from a declaration of state policy, the [s]tate's enactment of a comprehensive and detailed regulatory scheme in a particular area, or from the nature of the subject matter being regulated and the purpose and scope of the state legislative scheme, including the need for state-wide uniformity in a given area." Id. at 423-24 (internal quotations omitted).

As far as conflict preemption, Judge Jessica G.L. Clarke recently explained:

> "Under the doctrine of conflict preemption, a local law is preempted by a state law when a right or benefit is expressly given by State law which has then been curtailed or taken away by the local law." *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 933 N.Y.S.2d 388, 395 (1st Dep't 2011), *aff'd sub nom. Sunrise Check Cashing v. Town of Hempstead*, 20 N.Y.3d 481 (2013) (cleaned up). "For a local law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit the conduct the local law prohibits or provide 'some other indication that deviation from state law is prohibited.'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617–18 (2018)). Conflict

14

preemption exists where "there is a head-on collision between" the local law and the state law. *Lansdown*, 74 N.Y.2d at 764. However, the Court of Appeals has made clear not to read conflict preemption principles too broadly, because doing so "carries with it the risk of rendering the power of local governments illusory." *Ctr. for Indep. of Disabled v. Metro. Transportation Auth.*, 125 N.Y.S.3d 697, 704 (1st Dep't 2020) (citing *Garcia*, 31 N.Y.3d at 617). And the mere "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict." *Garcia*, 31 N.Y.3d at 617 (cleaned up).

Black, 2024 WL 4335453, at *6.

Essentially, whether through field or conflict preemption, if "a local law regulating the same subject matter is deemed inconsistent with state law[,]" then the state law preempts and does not allow for the enforcement of the local law. Police Benevolent Assn., 40 N.Y.3d at 423 (internal quotations omitted). However, in New York State, municipalities are allowed to make local laws in certain fields, such as "the government, protection, order, conduct, safety, health and well-being of persons or property therein[,]" as long as those local laws are "not inconsistent with the provisions of [the New York State] Constitution." N.Y. Const., art. IX, § 2(c). This is known as the "home rule provision." See Baldwin Union Free Sch. Dist. v. County of Nassau, 22 N.Y.3d 606, 614-15 (2014). Thus, the New York City Council has the ability to adopt local laws that supplement or expand on state laws. Thus, the issue in this case tests the limits and intersections of the "home rule provision" and preemption.

15

**B.    Prior Decisions Addressing this Very Issue**

Aside from Judge Kaplan, there is one other Judge, United States District Court Judge Jessica G.L. Clarke, who has decided the issue of whether state law preempts the Revival Statute.  See Black, 2024 WL 4335453, at *4; Combs, 2024 WL 4987044, at *2 (adopting Black).  In both the Black and Combs cases, Judge Clarke held that the CVA did not preempt the Revival Statute based on a determination that neither field nor conflict preemption applied.

**i.    Field Preemption**

As far as field preemption, Judge Clarke correctly held that "[t]he state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases."  Black, 2024 WL 4335453, at *4.  In so holding, the court made an apt analogy to the New York State Human Rights Law, which has an analogous purpose in the field of discrimination, but has been held *not* to preempt the New York City Human Rights Law, despite the substantial overlap between the two statutes.  Id. (citing New York State Club Ass'n, Inc. v. City of New York, 69 N.Y.2d 211, 217–18 (1987), aff'd, 487 U.S. 1 (1988)).

The court also made appropriate distinctions between this issue raised herein and cases in which field preemption was found.  See Black, 2024 WL 4335453, at *4.  For example, the court distinguished Consol. Edison Co. of New York v. Town of Red Hook, 60 N.Y.2d 99 (1983), which found preemption where the purpose of

the statute at issue was to "resolve *all* matters concerning the location of major

steam electric generating facilities presently under the jurisdiction of multiple state

*and local agencies*, including all matters of state *and local law*, in a *single*

*proceeding*" and the statute stated that "there is a need *for the state to control*

determinations regarding the proposed siting of major steam electric generating

facilities within the state."  Black, 2024 WL 4335453, at *4 (quoting Consol.

Edison Co., 60 N.Y.2d 99) (emphasis added).  Judge Clarke also distinguished

People v. De Jesus, 54 N.Y.2d 465 (1981), which found preemption where the

statute at issue "declared that it was the goal of the state, through the statute, to

'regulate and control the manufacture, sale and distribution within the state of

alcoholic beverages.'"  Black, 2024 WL 4335453, at *4 (quoting De Jesus, 54

N.Y.2d 465).  The court correctly noted that no similar language appeared in the

CVA.

　　　　Finally, as it relates to field preemption, Judge Clarke found that "[t]he CVA

is not the kind of scheme – one that is comprehensive and detailed – that would

support a finding of field preemption."  Black, 2024 WL 4335453, at *5 (quotation

and citation omitted).  In fact, the court held that "the CVA does not come close to

enacting a comprehensive scheme.  The details of the schemes relied upon in the

cases Defendant cite[d] [to in Black] do not exist in the instant matter.  The state

did not create a commissioner or board with investigatory or enforcement power.

The state did not impose direct controls at the local level.  The state did not set forth comprehensive procedures for administrative and judicial review.  Simply put, there is no detailed and comprehensive scheme." Id. at *6.

### ii.  Conflict Preemption

Judge Clarke also correctly determined that the defendants' claim of conflict preemption was without merit.  Initially, the court found that "the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state.  The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA." Id.  It went on to hold that "[t]here is also no 'head-on collision' between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action." Id. at *7 (citing Vatore v. Comm'r of Consumer Affs. of City of New York, 83 N.Y.2d 645, 650 (1994) (reversing a determination of preemption where "the local law would only further the State's policy interests")).

## III.  THE DISTRICT COURT ERRED IN FINDING THAT THE VGMVPL IS FIELD PREEMPTED BY THE CVA AND ASA

The District Court erred when it found that the VGMVPL is field preempted by the CVA and ASA, simply because the State Legislature never evinced an intent to make those laws the exclusive remedy for people with time-barred claims for sexual assault.

18

**First**, *in addition to the well-reasoned arguments set forth in the* <u>Black</u> <u>decisio</u>n, and as the District Court acknowledged, the conduct covered by the VGMVPL on one hand, and the CVA and ASA on the other hand, do not fully overlap. (A-336). The latter statutes regulate the statute of limitations for claims involving sexual assault specifically, and do not extend to gender-motivated violence more generally. <u>See</u> N.Y. CLPR §§ 214-g, j. While some claims of gender-motivated violence might involve criminal sexual activity, gender-motivated violence can also involve non-sexual violent crimes. As such, the CVA and ASA legislate within a different "field" than the VGMVPL. <u>See</u>, <u>e.g.</u>, <u>DJL</u> <u>Rest. Corp. v. City of New York</u>, 96 N.Y.2d 91, 95-96 (2001) (holding that while it was "well settled that the State's ABC Law [which had its own provisions governing nudity and the placement of adult establishments] impliedly preempts its field," a local zoning law requiring adult establishments to be confined to certain districts was not preempted because the laws had different focuses); <u>Police</u> <u>Benevolent Ass'n</u>, 40 N.Y.3d at 425 ("[T]he mere fact that a local law may deal with some of the same matters touched upon by [s]tate law does not render the local law invalid.").

Relatedly, the CVA and ASA cannot possible constitute a "comprehensive regulatory scheme" because the ASA and CVA do not even contain stand-alone causes of action, much less comprehensive regulatory schemes that would conflict

with the VGMVPL, a statute that provides an independent cause of action that does not even totally overlap with the claims revived under the state law.  There are countless legal commentaries regarding this exact issue that support Ms. Parker's argument, such as:

> Though the VGMVPL amendment is a revival amendment like the ASA, the VGMVPL creates an independent cause of action under which a plaintiff has the right to sue, whereas the ASA only revives expired claims available under other laws.  Because the VGMVPL creates its own cause of action, it provides for specific types of relief . . . In contrast, the relief available under an action authorized by the ASA is limited to the remedies provided for under the primary law.

Nicolas J. Pappas et al., "New York Enacts Revival Statutes, Renewing Expired Claims for Sexual Assault," *Weil, Gotshal & Manges LLP* (Aug. 2022) (internal citations omitted).[3]

**Second**, field preemption requires "an expression of need for uniform State-wide control."  Vatore, 83 N.Y.2d at 650.  Such a requirement cannot be met in this case because the CVA and ASA were never intended to occupy the field of expired claims of sexual violence.  While the VGMVPL, like both the CVA and ASA, was passed to increase opportunities for victims of sexual assault to seek justice, there is no evidence that the CVA or ASA sought to limit the ways in which such victims could pursue their claims or to be the sole statutes governing such claims, much

---

[3]    https://www.weil.com/-/media/mailings/employer_update_august-2022.pdf.

less that the CVA or ASA sought to limit remedies under statutes that provide for a

broader set of protections (*i.e.*, the VGMVPL provides remedies for both sexual

and physical violence if the same is motivated by gender). In fact, the legislative

history cited *supra* at pp. 7-9, along with the affidavit of Senator Hoylman-Sigal

(A-218-225), support the exact opposite conclusion.

**Third**, the District Court respectfully misunderstood or ignored key caselaw.

Incredibly, Defendant-Appellees failed to acknowledge the decision in Engelman

v. Rofe in either of their moving papers, and the District Court respectfully

misunderstood its holding. See generally Engelman v. Rofe, 144 N.Y.S.3d 20 (1st

Dep't 2021). In Engelman, the Appellate Division addressed whether the

VGMVPL's seven-year statute of limitations was preempted by the statutes of

limitations for assault and battery under New York State law, specifically N.Y.

CPLR §§ 215(3) and 214(2). Id. at 25. The court first distinguished between the

conduct targeted by each law, finding that:

> [T]he legislative intent of the VGM was to create a civil
> rights remedy or cause of action such as in [the federal
> Violence Against Women Act], rather than to extend the
> statute of limitations for a particular class of assaults [as in
> the CPLR].

Id. at 25-26. The court next focused on the clear rule in New York that local anti-

discrimination laws, like those enacted by the New York City Council are generally

not preempted by state law, noting that "[t]he VGM's construct is consistent with

the City's broad police power to enact legislation its residents from discrimination, including gender-related violence." Id. at 25. Thus, the Engelman court ruled that the VGMVPL was not preempted by the CPLR's limitations contained in §§ 215(3) and 214(2). Id. at 26. In fact, the court said that "[i]nasmuch as the VGM provides a different time than that prescribed in CPLR 214(2), the time prescribed in the VGM controls." Id.

The District Court respectfully misunderstood the import of Engelman in its brief mention of the case. (A-332). The District Court found that Engelman is distinguishable from Ms. Parker's case because it dealt with the creation of the VGMVPL as a whole, and not the 2022 Revival Amendment specifically. Id. However, while the 2022 Revival Amendment did impact the relevant limitations periods, it was not fundamentally created to extend the statute of limitations. The 2022 updates to the VGMVPL included not just a change to the limitations period but also other changes that collectively were designed to facilitate the purpose of the statute, including by expanding the individuals and entities subject to liability under the statute. See supra at p. 8. There is respectfully no good reason that the District Court did not find Engelman to be neither controlling nor persuasive.

The District Court respectfully completely ignored another case that is crucial to analyzing the issue of preemption of the VGMVPL, and that case is Doe v. Gooding, No. 20 Civ 6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022).

22

In <u>Gooding</u>, the plaintiff commenced her action timely within the seven-year

statute of limitations under the VGMVPL.  <u>See</u> <u>Gooding</u>, 2022 WL 1104750, at *1;

<u>see</u> <u>also</u> N.Y. Admin. Code § 10-1105(a).  The defendant contended that the action

should still be dismissed because the VGMVPL conflicted with N.Y. CPLR §

215(3), and thus the state law preempted the city law.  <u>Gooding</u>, 2022 WL

11104750, at *2.  The court held that the First Department's decision in <u>Engelman</u>

was controlling precedent:

> [T]he Court defers to the appellate court's holding that the
> VGM's seven-year statute of limitations is not preempted.
> The First Department in *Engelman* is the only Appellate
> Division to have considered the issue, and there is no
> indication that New York's Court of Appeals would decide
> otherwise.

<u>Id.</u> (citing <u>Licci ex rel. Licci v. Lebanese Canadian bank, SAL</u>, 739 F.3d 45, 48 (2d

Cir. 2013) ("instructing federal district courts to defer to state intermediate

appellate courts unless there are 'persuasive data' that the state's highest court

would disagree")).  The <u>Gooding</u> court further held that the <u>Engelman</u> court

reached the correct result:

> [The defendant's] suggestion that the First Department
> overlooked principles of preemption law (that the lower
> court did not) is without merit.  To the contrary, *Engelman*
> rejected the exact argument that [the defendant] resurrects
> here: that the CPLR implicitly preempts the VGM, even if
> it does not do so expressly.  The VGM has been on the
> books for over two decades since its passage in 2000, and
> [the defendant] has identified nothing that the state
> legislature has done during those decades – either

23

> expressly or implicitly – to preempt the VGM's statute of
> limitations or bring it under the ambit of the CPLR.

<u>Gooding</u>, 2022 WL 11104750 at *3 (citations omitted).  Similarly, in the nearly two

years since the 2022 Revival Amendment was passed, the New York Legislature

has taken no steps, nor has it issued any statement, to convey or suggest that the

2022 Revival Amendment is preempted by the CVA or ASA.  In fact, just the

opposite has occurred.  <u>See</u> <u>generally</u> (A-218-335).  Because it is clear that the

State Legislature never intended to make the CVA or the ASA the exclusive

remedy for individuals with time-barred claims of gender-motivated violence, the

District Court erred when it found that the VGMVPL is field preempted by the

CVA and ASA.

## IV.  THE DISTRICT COURT ERRED IN FINDING THAT THE VGMVPL IS CONFLICT PREEMPTED BY THE CVA AND ASA

### A.  There Is No Conflict Preemption

The District Court also erred when it found that the VGMVPL is conflict

preempted by the CVA and ASA because the statutes of limitations do not actually

conflict with one another.  Conflict preemption only exists where "there is a head-

on collision between" the state and local laws.  <u>Lansdown Entertainment Corp. v.</u>

<u>New York City Dept. of Consumer Affairs</u>, 74 N.Y.2d 761, 764 (1989).  But, as

noted above, courts should be cautious about finding conflict preemption, less they

"risk [ ] rendering the power of local governments illusory."  <u>Ctr. for Indep. of</u>

24

Disabled v. Metro. Trans. Auth., 125 N.Y.S.3d 697, 704 (1st Dep't 2020).  For

instance, "the direct consequences of a local ordinance should be examined to

ensure that it does not 'render illegal what is specifically allowed by State law.'"

Lansdown, 74 N.Y.2d at 764 (quoting De Jesus, 54 N.Y.2d at 472).

To begin, a close look at the ASA, CVA, and VGMVPL confirms that there

is no direct conflict between them.  As noted, the conduct prohibited by the statutes

does not even fully overlap.  The VGMVPL prohibits *any and all* crimes of

violence motivated by gender in New York City, while the CVA and ASA address

only conduct that would violate certain specified New York State penal laws for

certain sexual offenses.  See N.Y.C. Admin. Code §§ 10-1103, 10-1104; CPLR

214-g; CPLR 214-j.  The VGMVPL applies to violent acts that do not constitute

offenses under the laws pertaining to sexual assault, including to acts that may not

involve a sexual assault at all.  The VGMVPL also covers certain property crimes

that likewise do not comprise sexual assaults.  See N.Y.C. Admin. Code § 10-1103.

For example, burglary, robbery, theft, vandalism, or arson would all qualify if the

conduct poses a serious risk of injury and is motivated by misogyny.

Courts routinely uphold local laws that address a particular concern against

challenges on both field and conflict preemption grounds, notwithstanding state

laws that address much of the same subject matter.  In People v. Judiz, 38 N.Y.2d

529 (1976), the Court held that a local law prohibiting the possession of certain

25

realistic toy or imitation pistols was not preempted by state laws that covered the regulation of toy or imitation guns. The Court held that "while State law evinces an intent to cover, quite broadly, most of the possible categories of weapons for which it deems some sanction is necessary when these are used with illegal intent, the city ordinance is aimed at the prevention of a *particular type of abuse*." Judiz, 38 N.Y.2d at 532 (emphasis added) (referring to the particular concern about realistic guns that could be mistaken for real guns). See also People v. Woods, 52 Misc. 3d 618, 625 (N.Y. City Crim. Ct., May 11, 2016) ("Where state law evinces an intent to cover a category broadly, and the city ordinance is aimed at the prevention of a *particular* type of abuse, it follows that State law is neither at odds with, or exclusive of, the ordinance in question.") (emphasis in original). Here, too, while the ASA and CVA aim to cover most categories of sexual assault offenses, the VGMVPL is expressly aimed at the prevention of a "particular type of abuse" – gender-motivated crimes of violence within New York City.

In McDonald v. New York City Campaign Fin. Bd., 40 Misc.3d 826 (Sup. Ct. N.Y. Cnty. 2013), aff'd as modified, 117 A.D. 3d 540 (1st Dep't 2014), the Court again rejected a preemption challenge, this time to a local law that imposed more restrictive campaign contribution limits than the limits in the state regularly scheme. In that case the plaintiff argued that because the state law "promulgates such a detailed scheme of contributions for these positions . . . it is clear that the

State intended to preempt this area." Id. at 844. The court rejected this argument, finding that "the areas of State and Local Law are not inconsistent, but complementary," and that they "actually supplement each other." Id. at 849-50.

The court also rejected the plaintiff's argument that more restrictive contribution limits at the local level were inconsistent with the state's higher limits because the state had considered and rejected public funding, and instead chose to set the higher contribution limits. Id. at 840-41. Similarly here, Defendants effectively ask this Court baselessly to presume, from the state's choice to open particular revival windows, that the state did not intend to allow *any* other revival windows, and did not intend to allow opportunities for survivors to seek redress at the local level. But, as with the different limits in McDonald, the City's choice to open a revival window for gender-motivated crimes of violence in fact *complements and supplements* the very goals expressed by the state legislature in enacting the ASA and the CVA, to allow survivors to come forward and seek justice. The differences in the revival windows (and of course the differences as well in the claims and the remedies that can be brought within those windows), do not render the laws conflicting. Id. at 836 (noting favorably defendants' argument that "just because a local law *differs* from a state law, does not necessarily mean it is *inconsistent* with State law.") (emphasis in original).

The First Department in <u>McDonald</u> affirmed, holding that the more restrictive local limits were not inconsistent with the state law "[i]n light of the Election Law's purpose of bolstering public confidence in the election process by restricting contributions." 117 A.D.3d at 541. Similarly, in light of the ASA and CVA's stated purposes of providing sexual assault survivors more time to seek redress for assaults, the VGMVPL's additional opportunities to seek redress for specified gender-motivated crimes including certain types of sexual assaults are not inconsistent with any legislative objective of the ASA and/or CVA.

### B.    The District Court Erred in Finding Conflict Preemption

The District Court ruled that there was conflict preemption between the VGMVPL and the ASA because the window to file claims revived under the ASA opened before the VGMVPL revival window opened and closed before the VGMVPL revival window closed. (A-332-333). Judge Kaplan respectfully did not cite to a single case to support the proposition that this fact alone rises to the level of conflict provision. In particular, despite the differing windows – which, again, apply to different categories of claims – the VGMVPL does not "'render illegal what is specifically allowed by State law.'" <u>Lansdown</u>, 74 N.Y.2d at 764 (quoting <u>De Jesus</u>, 54 N.Y.2d at 472). As such, there is no conflict preemption.

The District Court also unfairly interpreted the language in the ASA that states that it applies "[n]otwithstanding any provision of law which imposes a

period of limitation to the contrary." See N.Y. CPLR §§ 214-g, j. To begin, given that the ASA and VGMVPL do not overlap in their entirety, and that the VGMVPL is a standalone and specific statute, it would be incorrect to say that the VGMVPL's Revival Statute is contrary to the ASA. In any event, given the legislative history, the proper reading of the clause is that the State Legislature wanted to make clear that claims revived by the CVA or ASA would also be revived under the VGMVPL, notwithstanding the existence of any provision of law with a ***more restrictive*** limitations period. Nothing suggests that the CVA and ASA were not intended to limit a plaintiff's ability to bring a timely claim under another law, such as the VGMVPL, with a ***less restrictive*** limitations period. Such an interpretation would be contrary to the relevant legislative intent, which, pursuant to the ASA, was to "prospectively increase . . . statutes of limitations for a subset of sexual offenses committed against adults" and to thereby provide "survivors of these heinous crimes enough time to pursue justice." 2021 N.Y. S. B. 66, Comm. Rep.

The proper interpretation of the language at issue is confirmed by Senator Hoylman-Sigel's affidavit, which states that the language at issue, which appears both in the CVA and ASA, "makes clear that the legislative intent in August 2019 was, and remains, not to preempt other laws . . . This includes the VGMVPL." (A-22).

Finally, even if the VGMVPL was found to be inconsistent with the ASA and CVA, *which it is not*, it should be upheld because it was "designed to deal with a specific local problem."  See People v. Nemadi, 140 Misc.2d 712 (Crim. Ct. N.Y. Cnty. 1988) (holding that New York City's law requiring window guards in particular apartments was not preempted by the arguably inconsistent state sanitary code because "New York City suffers a unique problem in the sheer numbers of children at risk, and large multi-story dwellings suffering managerial neglect").  In Nemadi, the court noted that "additional government control [wa]s necessary to meet the special housing problems existing in the City of New York . . . thus, *even if the Window Guard Rules were inconsistent, the City has addressed a special condition distinct in its intensity and volume from that found elsewhere in the State.*"  Id. at 720-21 (emphasis added). See also People v. Cook, 34 N.Y.2d 100, 109-110 (1974) (noting that a local law will be upheld "despite the inconsistency" with state law if there are "special conditions existing in the city").

While gender-motivated violence obviously is not a problem unique to New York City, "[t]here is no requirement that a local law be a response to a uniquely local situation" (Cook, 34 N.Y.2d at 109) and the VGMVPL, like the local law pertaining to window guards, was passed to address what the City Council identified as a particularly intense and pervasive problem within its borders (see generally, the 2021 VGMVPL Committee Report).

For the foregoing reasons, there is no conflict preemption.

## V. THE DISTRICT COURT'S CRITIQUES OF THE DECISION IN BLACK ARE MISPLACED

In granting Defendants' motions, Judge Kaplan addressed the decision in Black and ultimately disagreed with it.  First, Judge Kaplan noted that the Black decision analyzed the CVA without reference to the ASA.  (A-333-334).  However, Judge Kaplan did not go on to explain how the passage of the ASA makes it any more likely that the state was attempting to occupy the field as it relates to claims involving sexual assault, nor did he explain how the state's legislation relating to claims of sexual assault was intended to preempt a revival window applicable to a partially overlapping but differed set of claims brought under a specific statute prohibiting gender-motivated violence.

Second, Judge Kaplan took issue with Judge Clarke's comparison of the statutes at issue here to those that have been found to create field preemption. According to Judge Kaplan, the fact that these comparator statutes are more complex than the ASA and CVA is not a valid basis for distinction.  (A-334).  Even if Judge Kaplan is right, this observation misses the point.  The statues at issue in Consol. Edison Co., 60 N.Y.2d 99 and De Jesus, 54 N.Y.2d at 465 were not found to preempt the field merely because they were complex.  Rather, as noted *supra* at pp. 13-14, the articulated purposes of those statutes was to create uniform, state-controlled schemes around energy generation siting and alcohol distribution

31

control.  There is no comparable language contained in the ASA or CVA that would support the notion that the state wanted to prevent victims of gender-motivated violence from taking advantage of the Revival Statute.  Indeed, the crux of Judge Clarke's decision rested on her observation that "the state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases."  Black, 2024 WL 4335453, at *4.

Finally, Judge Kaplan reiterated a number of points made previously, claiming that the Black court did not consider them.  Judge Kaplan once again noted that the statutes at issue created different filing timeframes and pointed to the "notwithstanding…" language.  Respectfully, these arguments are misguided for the reasons addressed *supra* at pp. 22-25.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's decision granting Defendant-Appellees' motions to dismiss and for judgment on the pleadings should be reversed.

Dated: April 23, 2025
      New York, New York             Respectfully submitted,

                                **WIGDOR LLP**

                                By: _____
                                     Michael J. Willemin
                                     Brooke Payton

                                85 Fifth Avenue
                                New York, NY 10003
                                Telephone: (212) 257-6800
                                Facsimile: (212) 257-6845
                                mwillemin@wigdorlaw.com
                                bpayton@wigdorlaw.com

                                *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,728 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Time New Roman.

Dated: April 23, 2025
    New York, New York

_____
Michael J. Willemin

34

**SPECIAL APPENDIX**

i

**TABLE OF CONTENTS**

**Page**

Memo Endorsed Order of the Honorable Lewis A.
    Kaplan, dated February 4, 2025, Appealed From ..     SPA-1

SPA-1

Case 1:24-cv-04813-LAK    Document 43    Filed 02/03/25    Page 1 of 1

# WIGDOR.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-4-25

**Michael J. Willemin**
mwillemin@wigdorlaw.com

February 3, 2025

**VIA ECF**

The Honorable Lewis A. Kaplan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 21B
New York, NY 10007-1312

        Re:    Parker v. Alexander, et al., Civil Case No. 24 Civ. 4813 (LAK)(OTW)

Dear Judge Kaplan:

We represent Plaintiff Angelica Parker in the above-referenced action and write to inform the Court that Plaintiff has decided not to amend her Complaint in response to the Court's January 22, 2025 Order. ECF 42. Accordingly, we respectfully request that an order of final judgment be entered into the docket.

Respectfully submitted,

Michael J. Willemin

*Case dismissed. Clerk shall close the case.*

SO ORDERED

LEWIS A. KAPLAN, USDJ

2/4/25

85 FIFTH AVENUE  |  NEW YORK, NY 10003  |  212 257 6800  |  WIGDORLAW.COM