**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 25-487        Caption [use short title]

Motion for: amicus curiae relief

Parker v. Alexander

Set forth below precise, complete statement of relief sought:

leave to file the accompanying brief as amicus curiae

MOVING PARTY: City of New York    OPPOSING PARTY: Tal Alexander, Alon Alexander, Oren Alexander

☐ Plaintiff    ☐ Defendant

☐ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Devin Slack    OPPOSING ATTORNEY: (see next page)

[name of attorney, with firm, address, phone number and e-mail]

New York City Law Department

100 Church Street, New York, NY 10007

212-356-0817; dslack@law.nyc.gov

Court- Judge/ Agency appealed from: United States District Court for the Southern District of New York (Kaplan, J.)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

_____ Date: April 30, 2025    Service : ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**Opposing Attorneys:**

Milton L. Williams
   212-335-2030
   mwilliams@wmhwlaw.com
Deanna Paul
   212-335-2035
   dpaul@wmhwlaw.com
WALDEN MACHT HARAN & WILLIAMS LLP
250 Vesey Street
New York, NY 10281
*Counsel for Defendant-appellee Tal Alexander*


Isabelle Kirshner
   212-922-1080
   kirshner@clayro.com
CLAYMAN ROSENBERG KIRSHNER & LINDER LLP
305 Madison Avenue, Suite 650
New York, New York 10165
*Counsel for Defendants-appellees Alon Alexander & Oren Alexander*

# 25-487

## United States Court of Appeals
## for the Second Circuit

ANGELICA PARKER,

*Plaintiff-Appellant*,

*against*

TAL ALEXANDER, ALON ALEXANDER, OREN ALEXANDER,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of New York

## DECLARATION IN SUPPORT OF
## MOTION TO FILE BRIEF AS AMICUS CURIAE

DEVIN SLACK declares under penalty of perjury that the following is true and correct.

1.  As counsel for the City of New York, I submit this declaration in support of the City's motion for leave to file the accompanying amicus curiae brief in this appeal about whether one of the City's laws is partially preempted by state law. *See* Exhibit A (Proposed Amicus

Curiae Brief). Plaintiff-appellant consents to the filing; defendants-appellees do not consent.

### INTEREST AND BASIS
### FOR AMICUS CURIAE RELIEF

2.      This appeal is about the validity of one of the City's laws. Local Law 21 of 2022 established a revival period for claims arising under the City's own Gender-Motivated Violence Law. In this action, the district court held that Local Law 21's claim-revival measure is preempted by two provisions of New York civil procedure: CPLR 214-g and 214-j. The City seeks to submit the accompanying amicus brief to explain why the Court should certify the state-law preemption question to the New York Court of Appeals, as well as to correct the district court's misunderstanding of CPLR 214-g and 214-j and their relationship to Local Law 21's claim-revival measure.

3.      The City has a strong interest in defending its local laws against preemption challenges like this one. And the ability of local governments to decide when and how claims arising under local law may be brought goes to foundational home rule principles guaranteed by the New York State Constitution. *See* N.Y. Const. art. IX § 2.

## CONCLUSION

4.    This Court should grant the City leave to file the accompanying amicus curiae brief.

Dated:  New York, New York
         April 30, 2025

                          Respectfully submitted,

                          MURIEL GOODE-TRUFANT
                          *Corporation Counsel*
                          *of the City of New York*

          By:   _____
                DEVIN SLACK
                Assistant Corporation Counsel

                100 Church Street
                New York, New York 10007
                212-356-0817
                dslack@law.nyc.gov

# EXHIBIT A

## Proposed Amicus Curiae Brief

# 25-487

## United States Court of Appeals
## for the Second Circuit

ANGELICA PARKER,

*Plaintiff-Appellant,*

*against*

TAL ALEXANDER, ALON ALEXANDER, OREN ALEXANDER,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF FOR AMICUS CURIAE
THE CITY OF NEW YORK**

MURIEL GOODE-TRUFANT
*Corporation Counsel
of the City of New York*
100 Church Street
New York, New York 10007
212-356-0817
dslack@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
DEVIN SLACK
    *of Counsel*

April 30, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................ii

PRELIMINARY STATEMENT
AND INTEREST OF AMICUS CURIAE .........................................1

ISSUES PRESENTED......................................................................3

STATEMENT OF THE CASE..........................................................4

    A. The City's Gender-Motivated Violence Law and
      the law's claim-revival period............................................4

    B. This action under the City's Gender-Motivated
      Violence Law and the district court's ruling.....................6

    C. Similar litigation before this Court...................................9

SUMMARY OF ARGUMENT...........................................................9

ARGUMENT ...................................................................................12

    POINT I: THIS COURT SHOULD CERTIFY THE
    STATE-LAW PREEMPTION QUESTION.................................12

    POINT II: THE CITY HAS THE POWER TO DECIDE WHEN
    CLAIMS UNDER ITS LOCAL LAW MAY BE BROUGHT.........15

    A. The New York State Legislature disclaimed any
      intention to preempt the field. .........................................17

    B. The City's claim-revival measure complements,
      rather than conflicts with, state law................................19

CONCLUSION ..............................................................................27

CERTIFICATE OF COMPLIANCE ...............................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barenboim v. Starbucks, Corp.*,
    698 F.3d 104 (2d Cir. 2012)..................................................... 12, 13

*Bethea v. Children's Vill.*, 225 A.D.3d 580
    (N.Y. App. Div. 2d Dep't 2024)........................................................ 22

*Bracker v. Cohen*, 204 A.D.2d 115
    (N.Y. App. Div. 1st Dep't 1994)....................................................... 15

*City of N.Y. v. Patrolmen's Benevolent Ass'n
    of City of N.Y., Inc.*, 89 N.Y.2d 380 (1996) ............................... 13, 15

*Doe v. Black*, No. 23-cv-6418, 2024 U.S. Dist.
    LEXIS 175929 (S.D.N.Y. Sept. 27, 2024) ........................................ 9

*Engelman v. Rofe*, 194 A.D.3d 26
    (N.Y. App. Div. 1st Dep't 2021)................................................. 15, 19

*Eric M. Berman, P.C. v. City of N.Y.*,
    25 N.Y.3d 684 (2015).................................................................... 26

*Garcia v. N.Y. City Dep't of Health & Mental
    Hygiene*, 31 N.Y.3d 601 (2018) ................................................. 19, 20

*GE Capital Corp. v. N.Y. State Div. of
    Tax Appeals*, 2 N.Y.3d 249 (2004)................................................. 25

*Jancyn Mfg. Corp. v. County of Suffolk*,
    71 N.Y.2d 91 (1987) ...................................................................... 17

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*,
    96 F.4th 539 (2d Cir. 2024)............................................................ 14

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*,
    No. 107, 2025 N.Y. LEXIS 131 (Feb. 20, 2025)............................ 22

*N.Y. State Club Ass'n v. City of N.Y.*,
    69 N.Y.2d 211 (1987)............................................................... 16, 18

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Nyack v. Daytop Vill., Inc.,*
78 N.Y.2d 500 (1991) ........................................................ 18

*Patrolmen's Benevolent Ass'n of City of N.Y., Inc.*
*v. City of N.Y.,* 142 A.D.3d 53
(N.Y. App. Div. 1st Dep't 2016) ...................................... 16

*People v. Diack,*
24 N.Y.3d 674 (2015) ........................................................ 18

*People v. New York Trap Rock Corp.,*
57 N.Y.2d 371 (1982) ........................................................ 17

*People v. Torres,*
37 N.Y.3d 256 (2021) ........................................................ 16

*Police Benevolent Ass'n of City of N.Y., Inc.*
*v. City of N.Y.,* 40 N.Y.3d 417 (2023) ........................... 16, 18

*Schoenefeld v. State of N.Y.,*
748 F.3d 464 (2d Cir. 2014) ............................................ 12

*United States v. Morrison,*
529 U.S. 598 (2000) ........................................................... 4

*Vatore v. Comm'r of Consumer Affairs of*
*City of N.Y.,* 83 N.Y.2d 645 (1994) ................................ 26

*Waterbury v. N.Y.C. Ballet, Inc.,* 205 A.D.3d 154
(N.Y. App. Div. 1st Dep't 2022) ...................................... 16

## Constitutional Provisions

N.Y. Const. art. IX § 2 ...................................................... 13

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Statutes and Laws**

N.Y. CPLR 201 ................................................................ 18

N.Y. CPLR 206 ................................................................ 18

N.Y. CPLR 208 ................................................................ 18

N.Y. CPLR 213 ............................................................ 18, 22

N.Y. CPLR 214 ................................................................ 22

N.Y. CPLR 214-d ............................................................. 18

N.Y. CPLR 214-g ........................................................*passim*

N.Y. CPLR 214-j .........................................................*passim*

N.Y. CPLR 215 ................................................................ 22

N.Y. L. 2019, ch. 11 .......................................................... 7

N.Y. L. 2020, ch. 130 ......................................................... 7

N.Y. L. 2022, ch. 203 ......................................................... 7

N.Y.C. Admin. Code § 8-903 (2000) ...................................... 5

N.Y.C. Admin. Code § 8-904 (2000) ...................................... 5

N.Y.C. Admin. Code § 8-905 (2000) ...................................... 5

N.Y.C. Admin. Code § 10-1102 (2005) ................................... 4

N.Y.C. Admin. Code § 10-1103 (2025) ................................... 5

N.Y.C. Admin. Code § 10-1104 (2025) ................................... 5

N.Y.C. Admin. Code § 10-1105 (2025) ............................ 5, 6, 21, 22

N.Y.C. L.L. 73/2000 .......................................................... 4

N.Y.C. L.L. 21/2022 ....................................................*passim*

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

## Regulations and Rules

9 NYCRR § 8.202.8 ................................................................ 22

22 NYCRR § 500.27 ............................................................... 12

2d Cir. Local Rule 27.2 ......................................................... 12

## PRELIMINARY STATEMENT
## AND INTEREST OF AMICUS CURIAE[1]

Through Local Law 21 of 2022, the City of New York established a revival period for claims arising under its own Gender-Motivated Violence Law, which provides a private right of action to victims of gender-motivated violence. The United States District Court for the Southern District of New York (Kaplan, J.) held that Local Law 21's claim-revival measure is preempted by two provisions of New York civil procedure: CPLR 214-g and 214-j. These provisions, enacted as part of New York State's Child Victims Act and Adult Survivors Act, are themselves claim-revival measures, though of a more general character.

The City submits this amicus brief to explain why the Court should certify the state-law preemption question to the New York Court of Appeals, as well as to correct the district court's misunderstanding of CPLR 214-g and 214-j and their relationship to Local Law 21's claim-revival measure. The City has a strong interest in defending its local laws against preemption challenges like this one.

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. And no person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

Before deciding the appeal, this Court should certify a question of New York law to the New York Court of Appeals: whether CPLR 214-g and 214-j preempt Local Law 21's claim-revival measure. The New York Court of Appeals has never addressed whether CPLR 214-g and 214-j have any preemptive effect, and it should have the opportunity to decide this important question about how these two state statutes and the local law interact. The answer is potentially determinative of every claim in this action, all of which arise under local law.

Absent certification, this Court should hold that Local Law 21's claim-revival measure is not preempted. The district court's reliance on field preemption was misplaced because, in crafting the provisions of New York civil procedure that address when civil actions must or may be brought, the State Legislature was explicit that those provisions could give way to other laws, including local laws. The State Legislature has thus specified that it has no intention of occupying the area to the exclusion of the City and other local governments.

The district court's conflict preemption analysis was also misconceived, turning on a misreading of CPLR 214-g and 214-j. These provisions displace contrary periods of limitation, but Local Law 21's claim-revival measure is neither a period of limitation nor contrary to CPLR 214-g and 214-j. Like the state provisions, Local Law 21 created a claim-

revival period to expand, rather than limit, plaintiffs' ability to bring suit. And CPLR 214-g and 214-j are both phrased in permissive rather than prohibitory terms, reviving plaintiffs' otherwise-barred claims and affirmatively authorizing suit on those claims. While both also place conditions limiting the scope of their authorizations, their plain language does not prohibit a plaintiff who has not taken advantage of these particular authorizations from exercising independent rights available under other laws, such as Local Law 21. The state provisions and Local Law 21 are compatible, not irreconcilable.

## ISSUES PRESENTED

Local Law 21 of 2022, in relevant part, revived time-barred claims brought under the City's Gender-Motivated Violence Law. Defendants argue that two provisions of state civil procedure—CPLR 214-g and 214-j—preempt the City's claim-revival measure.

1.      Should the Court certify this unresolved and claim-determinative question of state law to the New York Court of Appeals?

2.      In the alternative, should this Court hold that the measure is a lawful exercise of the City's home rule powers and not preempted?

## STATEMENT OF THE CASE

### A. The City's Gender-Motivated Violence Law and the law's claim-revival period

In 2000, the United States Supreme Court held that Congress lacked the constitutional authority to enact the civil remedy included in the federal Violence Against Women Act. *See United States v. Morrison*, 529 U.S. 598, 601-02 (2000). That same year, the City of New York enacted its Gender-Motivated Violence Law. *See* L.L. 73/2000. The law was originally codified in the Civil Rights title of the New York City Administrative Code. *See* N.Y.C. Admin. Code §§ 8-901 to 8-907 (2000). It has since been relocated to the Public Safety title. *See* Admin. Code §§ 10-1101 to 10-1107 (2025).

In enacting the law, the New York City Council recognized that gender-motivated violence exacts unique harms on victims. *Id*. § 10-1102. It also found that victims of gender-motivated violence face special challenges in having their claims heard, often encountering a "climate of condescension, indifference and hostility in the court system." *Id*. The City Council acted "to resolve the difficulty that victims face in seeking court remedies by providing an officially sanctioned and legitimate cause of action for seeking redress for injuries resulting from gender-motivated violence" in particular. *Id*.

4

In its original form, the City's Gender-Motivated Violence Law provided a right of action to "any person claiming to be injured by an individual who commits a crime of violence motivated by gender." Admin. Code § 8-904 (2000); *see also* Admin. Code § 10-1104 (2025). The law covered any act that was committed based on gender and due at least in part to gender-based animus, where the act would constitute a federal or state misdemeanor or felony against the person or against property (the latter only if the conduct also presented a serious risk of physical injury). Admin. Code § 8-903 (2000); *see also* Admin. Code § 10-1103 (2025). The Council authorized victims to seek remedies unavailable under the common law, including punitive damages and attorneys' fees. Admin. Code § 8-904 (2000); *see also* Admin. Code § 10-1104 (2025). The law also imposed a seven-year period of limitation, as compared to the one-year period that generally applies to common law intentional torts like assault and battery. Admin. Code § 8-905(a) (2000); *see also* Admin. Code § 10-1105(a) (2025).

In 2022, the City Council amended the Gender-Motivated Violence Law. *See* L.L. 21/2022. As relevant here, the Council revived claims arising under the law that were time-barred as of January 9, 2022, and authorized plaintiffs to bring those claims during a two-year period running from March 1, 2023 through March 1, 2025. Admin.

Code § 10-1105(a) (2025). This captured claims that accrued between 2000 and 2015, because no claims existed before the law's enactment in 2000 and because claims accruing after 2015 were not time-barred.

### B. This action under the City's Gender-Motivated Violence Law and the district court's ruling

Plaintiff Angelica Parker brought this action in state court asserting claims against defendants Alon, Oren, and Tal Alexander solely under the City's Gender-Motivated Violence Law (Appendix ("A") 9-16). Parker's complaint addresses conduct allegedly occurring in 2012 and she brought suit in June 2024, during the law's claim-revival period (*id.*). It is undisputed that, without the benefit of the claim-revival period, Parker's suit would have been untimely.

Defendants removed the action to federal court based on diversity jurisdiction (SDNY ECF No. 11). Alon and Oren Alexander moved to dismiss the complaint, while Tal Alexander answered and moved to dismiss on the pleadings (A17-18, 43). Defendants argued that two provisions of state civil procedure—CPLR 214-g and 214-j—bar Parker from relying on Local Law 21's claim-revival measure (SDNY ECF Nos. 16,

26).[2] The first provision, CPLR 214-g, was enacted as a part of the State's Child Victims Act, L. 2019, ch. 11; *see also* L. 2020, ch. 130. The second provision, CPLR 214-j, was enacted as part of the Adult Survivors Act, L. 2022, ch. 203. Both are claim-revival measures. They authorize plaintiffs to sue on otherwise time-barred claims within their scope until dates in August 2021 and November 2023, respectively, both of which fall before Parker commenced this action. CPLR 214-g; 214-j.

The district court agreed with defendants on the preemption question, concluding that CPLR 214-g and 214-j preempt Local Law 21's claim-revival measure in part (A324-39). Specifically, the court held that the City's law is preempted "to the that extent that [it] purports to revive civil claims arising from violations of sexual offense provisions of the New York Penal Law" (A336). But the court indicated that CPLR

---

[2] Oren Alexander raised a second argument. In addition to creating a claim-revival period, Local Law 21 also expanded the Gender-Motivated Violence Law to authorize suit against not only a person who "commits ... a crime of violence motivated by gender," but also anyone who "directs, enables, participates in, or conspires in the commission of [such] a crime." Admin. Code § 10-1104 (2025). Oren argued that this part of Local Law 21 does not apply retroactively (*see* SDNY ECF No. 16 at 9-11). The City agrees. *See* Brief for City of New York as Amicus Curiae, *Stein v. Rockefeller Univ. Hosp.*, No. 2024-03637 (N.Y. App. Div. 1st Dep't Apr. 2, 2025), ECF No. 22. Parker did not dispute that point below, but countered that her allegations are sufficient to state a claim against Oren under the Gender-Motivated Violence Law as it stood before Local Law 21 (*see* SDNY ECF No. 20 at 12). The district court did not reach that question, and this Court need not do so in the first instance, especially when it would not resolve the claims against all defendants.

214-g and 214-j do not preempt the revival of claims alleging conduct outside the sexual offense provisions of the New York Penal Law (*id.*).

The court started with field preemption, finding that CPLR 214-g and 214-j "occupy the field of revival of civil claims arising from violations of state sexual offense penal statutes, preempting local laws ... to the extent that they purport to revive the same category of claims" (A331). The court reasoned that CPLR 214-g and 214-j, taken together, are a "comprehensive and detailed regulatory scheme" (A330). Otherwise, the court's analysis—though framed in terms of field preemption—turned on a perceived conflict between the text of these provisions and Local Law 21 (A331-32).

Next, the district court turned to conflict preemption, with a focus on CPLR 214-j (A332-33). The court first concluded that Local Law 21 would prohibit claims from being brought during part of CPLR 214-j's revival period—from the beginning of CPLR 214-j's revival period (November 24, 2022) to the beginning of Local Law 21's revival period (March 1, 2023) (A332). The court did not explain how that observation bears on this case, which was commenced in June 2024.

But the district court also went on to find that Local Law 21 authorizes plaintiffs to bring claims under the Gender-Motivated Violence Law after the close of CPLR 214-j's revival window (A332-33). The court

concluded that Parker's "interpretation—in which state law opens the revival window and local law would close it—would conflict with the legislature's creation of such a limited window" (A333).

### C. Similar litigation before this Court

In another case raising the same preemption question, the district court reached the opposite conclusion. *See Doe v. Black*, No. 23-cv-6418, 2024 U.S. Dist. LEXIS 175929, at \*6-20 (S.D.N.Y. Sept. 27, 2024). This Court granted the defendants there leave to pursue an interlocutory appeal, and directed the parties to brief whether certification to the New York Court of Appeals is appropriate. *See* Order, *Doe v. Black*, No. 25-564 (2d Cir. Mar. 11, 2025), ECF No. 1. The appeal in that case and this appeal will be heard together. *See* Order, *Parker v. Alexander*, No. 25-487 (2d Cir. Apr. 16, 2025), ECF No. 19.

### SUMMARY OF ARGUMENT

The question in this appeal is whether two provisions of state civil procedure—CPLR 214-g and 214-j—preempt Local Law 21 of 2022 to the extent it revived time-barred claims under the City's Gender-Motivated Violence Law. The New York Court of Appeals has not addressed this question of New York law. This Court should certify the question to the New York Court of Appeals.

If this Court elects to decide the question, without certification, then it should hold that the City's claim-revival measure is not preempted. Field preemption has no bearing here. Rules 214-g and 214-j are contained in the article of the CPLR that speaks to when civil actions must or may be brought. And the New York State Legislature has disclaimed any intention to exclusively occupy that area, expressly stating that the provisions of that article of the CPLR can give way to other laws, including local laws.

Conflict preemption does not apply here either. The district court reasoned that a "notwithstanding" clause in CPLR 214-g and 214-j displaces Local Law 21's claim-revival measure. But the "notwithstanding" clause overrides only those laws that impose a "period of limitation to the contrary," such that the state-law revival measures would clearly be effective in reinstating otherwise-barred claims. The Gender-Motivated Violence Law's independent claim-revival authorization is not a "period of limitation." Nor is it "to the contrary" in the relevant sense, because it does not impose a bar to claims that the state statutes revive.

Rather, Local Law 21 is an independent claim-revival measure, addressing a particular cause of action created by local law, that itself *enlarges* plaintiffs' opportunity to sue. The "notwithstanding" clause in the state statutes therefore does not displace the Gender-Motivated

Violence Law's independent claim-revival authorization for claims brought pursuant to that specific law. The state statutes and local law are fully compatible, as they all expand the ability to bring suit.

Moreover, while the language of CPLR 214-g and 214-j places conditions on plaintiffs seeking to take advantage of their claim-revival authorizations, the operative language is permissive rather than prohibitory—as reflected in the State Legislature's use of the word "may." The upshot is that a plaintiff who brings suit during the Gender-Motivated Violence Law's claim-revival period is not doing anything that is prohibited by state law. The state statutes and local law each contain independent claim-revival authorizations, and nothing in the state statutes purports to bar a local law authorizing a different or more permissive claim-revival period for claims that themselves are creatures of local law. Local Law 21 and CPLR 214-g and 214-j therefore sit comfortably side by side, and swim in the same direction by opening the courthouse doors to vulnerable classes of plaintiffs.

## ARGUMENT

## POINT I

## THIS COURT SHOULD CERTIFY THE STATE-LAW PREEMPTION QUESTION

Local Law 21 of 2022 revived time-barred claims under the City's Gender-Motivated Violence Law and authorized plaintiffs to bring those claims within a two-year period. This appeal rises and falls on a single unresolved question of state law: whether the City's claim-revival measure is partially preempted by two provisions of New York civil procedure—CPLR 214-g and 214-j—which are themselves claim-revival measures. Consistent with the preference for having state courts decide novel questions of state law, *Schoenefeld v. State of N.Y.*, 748 F.3d 464, 471 (2d Cir. 2014), the Court should certify this state-law preemption question to the New York Court of Appeals.

This Court may certify an unresolved question of New York law to the New York Court of Appeals. *See* Local Rule 27.2(a); 22 NYCRR § 500.27(a). In deciding whether certification is appropriate, this Court asks whether the question (1) has been addressed by the Court of Appeals, (2) raises an issue of importance to New York, and (3) is determinative of a claim. *See Barenboim v. Starbucks, Corp.*, 698 F.3d 104, 109 (2d Cir. 2012). All three factors weigh in favor of certification here.

12

First, the New York Court of Appeals has never addressed whether the claim-revival period established by Local Law 21 is partially preempted by CPLR 214-g and 214-j. Indeed, the Court of Appeals has not addressed whether the legislative enactments that birthed these two provisions of the CPLR—the Child Victims Act and the Adult Survivors Act—have any preemptive effect in any context.

Nor can this Court predict with confidence how the New York Court of Appeals would decide the question. *See Barenboim*, 698 F.3d at 109. To be sure, precedent from the Appellate Division of the New York State Supreme Court is instructive (*see infra* at 15-16, 19), but that intermediate appellate court has not confronted the specific preemption question that lies at the heart of this case. Nor has a state trial court.

Second, the question is important to New York. On the most fundamental level, the ability of local governments to decide when and how claims arising under local law may be brought goes to foundational home rule principles guaranteed by the New York State Constitution. *See* N.Y. Const. art. IX § 2. And answering the preemption question raised in this appeal implicates "the competing constitutional values involved when State legislation impinges on and overlaps with local concerns." *City of N.Y. v. Patrolmen's Benevolent Ass'n of City of N.Y., Inc.*, 89 N.Y.2d 380, 390 (1996); *see also Barenboim*, 698 F.3d at 109 (noting

certification more likely to be appropriate where resolution of question "may require value judgments and public policy choices").

What's more, hundreds upon hundreds of Gender-Motivated Violence Law claims were brought during Local Law 21's revival period, and the law has garnered its own subcategory in the e-filing system for New York courts. The answer to the preemption question will affect many of these cases and, by extension, have a major impact on the public policy of affording a remedy to victims of gender-motivated violence. *Cf. Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 544 (2d Cir. 2024) (citing policy of providing remedies to victims of childhood sexual abuse in certifying question about the nature of waiting period under CPLR 214-g).

Third, the answer to the question is claim-determinative. If Local Law 21's claim-revival period is not preempted, then Parker's claims under the Gender-Motivated Violence Law are timely. Alternatively, if the claim-revival period is preempted, then the claims are untimely.

## POINT II

## THE CITY HAS THE POWER TO DECIDE WHEN CLAIMS UNDER ITS LOCAL LAW MAY BE BROUGHT

If the Court decides the merits itself, then it should find that Local Law 21's claim-revival measure is not preempted. While New York's preemption doctrine restricts the powers of local governments, the State Constitution also "grants significant autonomy to local governments to act with respect to local matters," and accordingly "limits the authority of the State Legislature to intrude in local affairs." *Patrolmen's Benevolent Ass'n*, 89 N.Y.2d at 387.

In this case, basic principles of home rule authority should inform any preemption analysis. Home rule authority is unquestionably "broad enough to include the creation of a private right of action," *Bracker v. Cohen*, 204 A.D.2d 115, 115 (N.Y. App. Div. 1st Dep't 1994), and that greater power includes the lesser power to decide when a private right of action created by local law may be brought, *see Engelman v. Rofe*, 194 A.D.3d 26, 28-32 (N.Y. App. Div. 1st Dep't 2021). Both of these insights have already been extended to the City's Gender-Motivated Violence Law specifically. *See id.* (confirming the City's "right to create a private right of action to protect its citizens from gender-motivated

15

violence" and rejecting preemption challenge to law's seven-year period of limitation).

The Gender-Motivated Violence Law is not an anomaly. The City has a long tradition of creating private rights of action advancing local interests, reaching back decades and spanning areas such as civil rights and public safety. *See, e.g.*, *N.Y. State Club Ass'n v. City of N.Y.*, 69 N.Y.2d 211, 217-22 (1987) (upholding the City's authority to define which entities should be exempt from its antidiscrimination law); *Patrolmen's Benevolent Ass'n of City of N.Y., Inc. v. City of N.Y.*, 142 A.D.3d 53, 55-56 (N.Y. App. Div. 1st Dep't 2016) (rejecting preemption challenge to local right of action about discriminatory policing); *Waterbury v. N.Y.C. Ballet, Inc.*, 205 A.D.3d 154, 160 (N.Y. App. Div. 1st Dep't 2022) (rejecting preemption challenge to local right of action about disclosure of intimate images); *cf. Police Benevolent Ass'n of City of N.Y., Inc. v. City of N.Y.*, 40 N.Y.3d 417, 420 (2023) (rejecting preemption challenge to creation of criminal offense promoting public safety); *People v. Torres*, 37 N.Y.3d 256, 260-61 (2021) (same).

Considering this backdrop, if the State Legislature truly intended to block the City and other local governments from exercising these recognized home rule powers when it crafted CPLR 214-g and 214-j, one would expect the Legislature to have done so explicitly. But it did not,

because the Legislature had no intention of intruding on local governments' home rule powers in this regard.

### A. The New York State Legislature disclaimed any intention to preempt the field.

The first part of the district court's ruling rested on field preemption. Under New York law, a field preemption finding is appropriate only when the State Legislature has "clearly evinced" its intention to block localities from acting in an entire field. *Jancyn Mfg. Corp. v. County of Suffolk*, 71 N.Y.2d 91, 97 (1987); *see also People v. New York Trap Rock Corp.*, 57 N.Y.2d 371, 378 (1982) (observing that the State Legislature's preemptive intent must be "unmistakable"). Far from clearly evincing an intent to preempt the City and other local governments from reviving claims arising under their own local laws, the State Legislature has instead disclaimed any intent to do so.

To find field preemption, the district court had to define the field in an artificially narrow way. According to the court, CPLR 214-g and 214-j "occupy the field of revival of civil claims arising from violations of state sexual offense penal statutes" (A331). In other words, the court defined the field so that its boundaries would match the precise scope of the two specific provisions of New York civil practice at issue. If that is not question begging, then it is close. New York law does not define the

relevant field in preemption analysis so narrowly. *See, e.g.*, *Police Benevolent Ass'n*, 40 N.Y.3d at 424 (criminal procedure); *N.Y. State Club Ass'n*, 69 N.Y.2d at 219 (antidiscrimination); *People v. Diack*, 24 N.Y.3d 674, 682 (2015) (sex offender management); *Nyack v. Daytop Vill., Inc.*, 78 N.Y.2d 500, 506 (1991) (substance abuse).[3]

The narrowest definition of the field that makes any sense here would be the timeliness of civil actions. After all, CPLR 214-g and 214-j do not exist in isolation. They are two of the thirty-five provisions that comprise Article 2 of the CPLR, which speaks to when civil actions must or may be brought—by establishing periods of limitation (such as CPLR 213), tolls on periods of limitation (such as CPLR 208), notice-of-claim requirements (such as CPLR 214-d), claim accrual principles (such as CPLR 206), and other timeliness-related rules.

And the State Legislature was explicit that Article 2 is not the final word on the timeliness of civil actions. While CPLR 201 provides that an action "must be commenced within the time specified in this article,"

---

[3] The district court's corollary error was its conclusion that, if the field is so narrowly defined, then CPLR 214-g and 214-j can be considered "comprehensive and detailed" (A330). These two provisions of New York civil procedure are miles away from the kind of comprehensive and detailed regulatory schemes that the New York Court of Appeals has found can support field preemption. *See, e.g.*, *Diack*, 24 N.Y.3d at 679-80 (finding that the provisions of the Sex Offender Registration Act, Sexual Assault Reform Act, Sex Offender Management and Treatment Act, and a session law together coalesced into a comprehensive and detailed regulatory scheme governing sex offender management).

it goes on to say that this general rule does not apply when "a different time is prescribed by law." The term "law" is broad and encompasses local laws. The Appellate Division, First Department recognized just that point when rejecting a preemption challenge to the Gender-Motivated Violence Law's seven-year period of limitation. *See Engelman*, 194 A.D.3d at 32 (holding that the "State has not evinced an intent to occupy the field with respect to the statute of limitations").

CPLR 201's disclaimer makes clear that field preemption is the wrong framework here. The appropriate framework for analyzing this case is conflict preemption, to which we now turn.

### B. The City's claim-revival measure complements, rather than conflicts with, state law.

The second part of the district court's order rested on conflict preemption, and it was mistaken on that score as well. Conflict preemption does not arise just because "state and local laws seek to regulate the same subject matter." *Garcia v. N.Y. City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018) (cleaned up). To be irreconcilable with state law, a local law must either prohibit conduct that state law affirmatively permits or—more relevant here—affirmatively permit conduct that state law prohibits. *See id.* at 617-18. A lower threshold could

overwhelm localities' home rule powers, "rendering the power of local governments illusory." *Id.* at 617.

The district court's conflict preemption ruling hinges on a misunderstanding of CPLR 214-g and 214-j and their relationship to Local Law 21's claim-revival measure. The foundation of that ruling is the following language in CPLR 214-g and 214-j:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary ... every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law ... which is barred as of the effective date of this section because the applicable period of limitation has expired ... is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

CPLR 214-g (concerning minors); *see also* 214-j (concerning adults, with shorter revival window).

The district court concluded that the "notwithstanding" clause applies to, and thus preempts, Local Law 21's claim-revival measure (A332-33). But the "notwithstanding" clause—by its terms—displaces only a law that "imposes a period of limitation to the contrary." CPLR 214-g; 214-j. This phrasing was no accident: the legislative goal was to

20

override other laws that would otherwise bar the claims described from being brought, but for the statutes' revival of those claims.

The district court overlooked several key points. First, the "period of limitation" imposed by the Gender-Motivated Violence Law is not its claim-revival measure, but its seven-year statute of limitation. *See* Admin. Code § 10-1105(a) ("A civil action under this chapter shall be commenced within seven years after the alleged crime of violence motivated by gender occurred."). The claim-revival measure does not "impose[] a period of limitation." CPLR 214-g; 214-j. It is a mechanism of expansion, not limitation. *See* Admin. Code § 10-1105(a) ("[A]ny civil claim or cause of action bought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced" within an additional period).

Put differently, Local Law 21's claim-revival measure overrides, rather than imposes, a period of limitation. While it interacts with the Gender-Motivated Violence Law's existing period of limitation, it is not itself "a period of limitation" as that term is used in CPLR 214-g and 214-j. In this way, the local law operates in the same manner as CPLR 214-g and 214-j. Those provisions similarly expand, rather than limit, the right to bring suit, and they do so by displacing periods of limitation that would otherwise bar a plaintiff's suit.

21

This understanding is confirmed by the distinctive structure and language shared by all three provisions, each of which first states that previously barred claims are "hereby revived" and then goes on to use the permissive "may" to affirmatively authorize plaintiffs to bring suit within an additional period. *See* CPLR 214-g; 214-j; Admin. Code § 10-1105(a). This departs from a traditional period of limitation, which typically uses mandatory language. *See, e.g.*, CPLR 213 ("The following actions must be commenced within six years...."); CPLR 214 ("The following actions must be commenced within three years...."); CPLR 215 ("The following actions shall be commenced within one year....").

The departure makes sense. While CPLR 214-g, CPLR 214-j, and Local Law 21 may be cousins to periods of limitation, they are another creature altogether: "claim revival statutes." *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 107, 2025 N.Y. LEXIS 131, at *3 (Feb. 20, 2025).[4] Traditional limitation periods are forward-looking and restrictive, imposing constraints on future cases. Claim-revival periods are

---

[4] We acknowledge that some state-court decisions have uncritically used the term "statute of limitation" to describe CPLR 214-g or 214-j. *See, e.g.*, *Bethea v. Children's Vill.*, 225 A.D.3d 580, 581 (N.Y. App. Div. 2d Dep't 2024). But the question addressed by those decisions did not turn on that label, and instead asked whether the claim-revival periods were tolled by pandemic-era executive orders suspending "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding." 9 NYCRR § 8.202.8.

backward-looking and remedial, authorizing a subset of plaintiffs to bring suit on claims that were once time-barred.

Second, even if claim-revival measures like Local Law 21 were regarded as periods of limitation, they are not "period[s] of limitation *to the contrary*" for the purpose of CPLR 214-g and 214-j. That fuller phrase makes clear that the state statutes' "notwithstanding" clauses focus on *bars* to suit that those claim-revival measures were being enacted to override. This point is confirmed by examining neighboring language. For example, in each statute, after referring to "period[s] of limitation to the contrary," the "notwithstanding" clause goes on to refer to laws establishing notice-of-claim requirements, which likewise may otherwise operate to bar the claims being revived. Notably, the language referring to notice-of-claim requirements does not include the words "to the contrary," which confirms that those words were specifically included in the first part of the "notwithstanding" clause to add precision to and restrict the scope of the "period of limitation" language.

Moreover, both aspects of the "notwithstanding" clause are echoed twice more in each statute. The statutory language describing the claims that are to be revived refers to claims "barred" as of the statutes' effective dates by either (i) expiration of a period of limitation, or (ii) failure to serve a timely notice of claim. Then, language at the very

end of the statutes specifies that a court's prior dismissal of the covered claims will not provide ground to dismiss suits brought pursuant to the revival measure if the prior dismissal was based on either (i) a time bar or (ii) failure to serve a notice of claim.

At each turn, including in the "notwithstanding" clause, CPLR 214-g and 214-j refer to *bars* to suit established by either periods of limitation or notice-of-claim requirements. But Local Law 21 does not establish a *bar* to suit; rather, it does the opposite. It revives otherwise-barred claims arising under the Gender-Motivated Violence Law, just as the state statutes do more generally. Local Law 21 is therefore not overridden by the state statutes' "notwithstanding" clause.

To be sure, the authorizations to bring suit conferred by CPLR 214-g and 214-j are not unconditional; to take advantage of their claim-revival periods, a plaintiff must abide by the statutes' terms by filing within a specified window. But the specified window merely defines the limits of the revival authorization granted in state law; it does not conflict with the existence of *independent* revival authorizations addressing particular causes of action that may be defined differently or more permissively. At their core, the state claim-revival provisions are permissive and expansive in a way that traditional periods of limitation are not. And nothing in them, including the "notwithstanding" clause, prohibits

localities from adopting their own claim-revival measures capturing claims that are creatures of their own local laws. At the end of the day, Local Law 21 authorizes something that is not prohibited by state law. That is no basis for conflict preemption.

Look at it from a plaintiff's perspective. Rules 214-g and 214-j provide that, if a plaintiff has a time-barred claim, then she "may" exercise her right to bring the claim no later than the end of the revival window. The text is conditional, but it is not prohibitory. *See GE Capital Corp. v. N.Y. State Div. of Tax Appeals*, 2 N.Y.3d 249, 255 n.1 (2004) (noting "the term 'may' is permissive," and courts "will not presume that the Legislature meant 'shall' when it said 'may'"). If the plaintiff fails to comply with the conditions, then she loses the right conferred by state law. But nothing in the text prohibits the plaintiff from taking advantage of other rights conferred by other laws. So, if a plaintiff brings a Gender-Motivated Violence Law claim later, under Local Law 21's claim-revival period, she is not doing anything that is prohibited by the text of CPLR 214-g or 214-j.

While no further insight is required to conclude there is no conflict here, two other points warrant mentioning. First, Local Law 21's claim-revival measure coincides with the public policy animating CPLR 214-g and 214-j: opening the courthouse doors for victims who have faced

special roadblocks in obtaining justice (*see supra* at 4). And, viewed in that light, "the local law would only further the State's policy interests." *Vatore v. Comm'r of Consumer Affairs of City of N.Y.*, 83 N.Y.2d 645, 650 (1994).

Second, while there is some overlap in the conduct that can give rise to a claim captured by CPLR 214-g and 214-j and a claim under the City's Gender-Motivated Violence Law, differences abound. As compared to the claims revived by CPLR 214-g and 214-j, the claims revived by Local Law 21 are rooted in local law specifically, serve the purpose of remedying and deterring gender-motivated violence in particular, and support different remedies, such as punitive damages and attorneys' fees. And in this way, Local Law 21 is "complementary to, and compatible" with CPLR 214-g and 214-j. *Eric M. Berman, P.C. v. City of N.Y.*, 25 N.Y.3d 684, 691 (2015).

## CONCLUSION

This Court should certify the following question to the New York Court of Appeals: whether Local Law 21's claim-revival measure is preempted by CPLR 214-g and 214-j. In the alternative, this Court should hold that the claim-revival measure is a lawful exercise of the City's home rule powers and not preempted by either provision.

Dated:  New York, New York
      April 30, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*

By: _____
DEVIN SLACK
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-0817
dslack@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
DEVIN SLACK
   *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 5,727 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
DEVIN SLACK