# 25-0487

## United States Court of Appeals

*for the*

## Second Circuit

ANGELICA PARKER,

*Plaintiff-Appellant,*

– v. –

TAL ALEXANDER, ALON ALEXANDER, OREN ALEXANDER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE TAL ALEXANDER

MILTON L. WILLIAMS
DEANNA M. PAUL
WALDEN MACHT HARAN & WILLIAMS LLP
*Attorneys for Defendant-Appellee
  Tal Alexander*
250 Vesey Street, 27th Floor
New York, New York 10281
(212) 335-2030

CP COUNSEL PRESS    (800) 4-APPEAL • (381954)

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ..................................................................1

COUNTER-STATEMENT OF THE CASE .................................................5

SUMMARY OF ARGUMENT ...................................................................7

ARGUMENT ............................................................................................9

I.    LEGISLATIVE HISTORY, STATUTES OF LIMITATIONS AND
REVISION PROVISIONS ................................................................10

II.   FIELD PREEMPTION BARS THE REVIVAL PROVISION OF
THE 2022 VGMVPL AMENDMENT ............................................15

III.  CONFLICT PREEMPTION BARS THE REVIVAL PROVISION OF
THE 2022 VGMVPL AMENDMENT ............................................19

IV.  PLAINTIFF-APPELLANT'S ARGUMENTS FAIL ....................24

     A.    *Engleman v. Rolfe* and *Doe v. Gooding* ...............................24

     B.    *Doe v. Black* ........................................................................26

     C.    Plaintiff-Appellant's Remaining Arguments Are Without Merit .......29

CONCLUSION ........................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
  25 N.Y.3d 581 (2015) ............................................................3

*Albany Area Builders Ass'n v. Town of Guilderland,*
  74 N.Y.2d 372 (1989) ...........................................................15

*Ba Mar, Inc. v. Cnty. of Rockland*,
  164 A.D.2d 605, 566 N.Y.S.2d 298 (2d Dep't 1991).........................28

*Blanchette v. Connecticut Gen. Ins. Corps.*,
  419 U.S. 102 (1974) .............................................................31

*Breest v. Haggis*,
  180 A.D.3d 83 (2019) ...........................................................14

*Carroll v. Trump*,
  650 F. Supp. 3d 213 (S.D.N.Y. 2023) ......................................12

*Cook v. Budget Rent-A-Car Corp.*,
  502 F. Supp. 494 (S.D.N.Y. 1980) ........................................31

*DJL Rest. Corp. v. City of New York*,
  96 N.Y.2d 91 (2001) ...........................................................15

*Doe v. Black*,
  2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) .................... 26, 27, 28, 29, 30, 31

*Doe v. Gooding*,
  2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022) ........................... 24, 25

*Doe v. Jones*,
  2022 WL 2065032 (E.D.N.Y. June 8, 2022) ..............................10

*Doe v. New York City Board of Education*,
  2023 WL 2574741 (E.D.N.Y. Mar. 20, 2023)................................11

*Doe v. New York City Dep't of Educ.*,
  669 F. Supp. 3d 160 (E.D.N.Y. 2023) ......................................17

*Engelman v. Rofe*,
  194 A.D.3d 26 (1st Dep't 2021) ........................................... 24, 25, 26

*Garcia v. New York City Dep't of Health & Mental Hygiene*,
　31 N.Y.3d 601 (2018) ........................................................19

*Heintz v. Jenkins*,
　514 U.S. 291 (1995)..........................................................31

*Hymowitz v. Eli Lilly & Co.*,
　73 N.Y.2d 487 (1989) ........................................................18

*In re World Trade Center Lower Manhattan Disaster Site Litig.*,
　30 N.Y.3d 377 (2017) ..........................................................4

*J.S.M. v. City of Albany Dep't of Gen. Servs.*,
　83 Misc. 3d 1082 (N.Y. Sup. Ct. 2024) ..............................17

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*,
　2025 WL 554454 (N.Y. Feb. 20, 2025) ..............................23

*Lansdown Ent. Corp. v. New York City Dep't of Consumer, Affs.*,
　74 N.Y.2d 761 (1989) ........................................................19

*Matter of Chwick v. Mulvey*,
　81 A.D.3d 161 (2d Dep't 2010) ..........................................20

*Mayor of City of New York v. Council of City of New York*,
　4 Misc. 3d 151 (Sup. Ct. 2004).................................... 15-16

*Moreira v. Societe Generale, S.A.*,
　125 F.4th 371 (2d Cir. 2025) .............................................22

*Nussenzweig v. diCorcia*,
　9 N.Y.3d 184, 878 N.E.2d 589 (N.Y. 2007).......................22

*Oawlawolwaol v. Boy Scouts of Am.*,
　2021 WL 4355880 (E.D.N.Y. Sept. 24, 2021) ...................11

*P. Stolz Fam. P'ship L.P. v. Daum*,
　355 F.3d 92 (2d Cir. 2004)................................................22

*Parker v. Alexander*,
　2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) .............. *passim*

*PC-41 Doe v. Poly Prep Country Day Sch.*,
　590 F. Supp. 3d 551 (E.D.N.Y. 2021) ......................... 10, 18

*People v. Cooper*,
　49 Misc. 3d 132(A), 26 N.Y.S.3d 215 (N.Y. App. Term. 2d Dep't 2015) .........28

iii

*People v. Diack*,
   24 N.Y.3d 674 (2015) ................................................................. 18, 27

*People v. Torres*,
   37 N.Y.3d 256 (2021) ........................................................................19

*Police Benevolent Ass'n of City of New York, Inc. v.
   City of New York*,
   40 N.Y.3d 417 (2023) ............................................................. 9, 15, 27

*Regina Metro. Co., LLC v.
   New York State Div. of Hous. & Cmty. Renewal*,
   35 N.Y.3d 332 (2020) ........................................................ 3, 4, 18, 29

*S. A. v. Bell*,
   2023 WL 8653131 (N.Y. Sup. Ct. Dec. 14, 2023) ...........................30

*Se. Cmty. Coll. v. Davis*,
   442 U.S. 397 (1979) ...........................................................................31

*Segal v. N.Y. Mil. Acad.*,
   2023 WL 5211220 (S.D.N.Y. Aug. 14, 2023)...................................17

*Sibley v. KLM-Royal Dutch Airlines
   (Koninklijke Luchtvaart Maatschappij N.V.)*,
   454 F. Supp. 425 (S.D.N.Y. 1978) ...................................................31

*Tanges v. Heidelberg N. Am., Inc.*,
   93 N.Y.2d 48, 710 N.E.2d 250 (1999)...............................................23

*Wilkie v. Vill. of Hempstead*,
   2023 WL 5952056 (E.D.N.Y. June 20, 2023) ...................................17

## Statutes & Other Authorities:

N.Y. Const., art. IX, § 2(c)(10) .................................................................9

22 N.Y.C.R.R. § 202.72 .........................................................................19

C.P.L.R. § 214-g ........................................................................... *passim*

C.P.L.R. § 214-j ............................................................................ *passim*

C.P.L.R. § 215(3) ....................................................................................25

Committee Report for 2021 Senate Bill 66 ...................................... 12-13

Committee Report for 2019 Senate Bill 2440 ........................................11

N.Y.C. Admin. Code §10-1101 ...................................................................13

N.Y.C. Admin. Code §10-1102 ...................................................................13

N.Y.C. Admin. Code §10-1103 ...............................................................13

N.Y.C. Admin. Code §10-1105 ............................................................ 6, 9, 14, 20

## **PRELIMINARY STATEMENT**

When the New York State Legislature adopted the Child Victim's Act ("CVA"), CPLR §214-g, and the Adult Survivor's Act ("ASA") CPLR §214-j, it carefully balanced (1) the laudable goal of providing victims of sexual offenses a second chance to assert otherwise time-barred claims, with (2) competing concerns regarding prosecution of stale claims, fairness to defendants, repose, and the burden on the judiciary. Such competing concerns, which exist whenever the Legislature enacts a revival statute, are particularly pronounced here. The statutes permit the assertion of claims that stretch back dozens of years; that lack corroborating eyewitness testimony or forensic evidence; that are based solely on the plaintiff's allegations; and that boil down to the trier of fact's assessment of the plaintiff's and defendant's respective credibility.

The question presented is whether Plaintiff, having failed to avail herself of the applicable revival window under the ASA, may instead bring suit on her otherwise time-barred claim under New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL"), pursuant to a separate revival amendment adopted by the New York City Council in 2022 (the "2022 VGMVPL Amendment" or "Amendment"). In particular: do the State's revival statutes preempt the City statute as a matter of (1) field preemption, because the State enacted a comprehensive scheme that occupies the relevant field, or (2) conflict preemption,

because the City's revival statute directly conflicts with the State statutes by permitting litigation that the State statutes prohibit, undermining the narrowly-tailored revival windows created by the State, and upsetting the State's express statutes of repose.

As to the field preemption issue, the CVA and ASA have comprehensive scope: they collectively revive every otherwise time-barred type of civil claim arising out of a sex crime, *i.e.*, a criminal offense under New York Penal Law Article 130. They do so for every possible alleged victim, whether that person was an adult or a minor at the time of the offense; they cover every possible harm, whether physical, psychological, or other injury or condition; and they extend to every possible defendant whose intentional or negligent acts or omissions caused the injury in whole or part, not simply the perpetrator. They do so to the exclusion of any other statute, including any legislation by City Council, because they apply "notwithstanding any provision of law which imposes a period of limitation to the contrary." The legislation also staggered the revival windows for periods beginning six months after the effective dates both to prepare courts for an anticipated onslaught of cases and to train judges.

As to the conflict preemption issue, the ASA and the CVA created *limited* time windows to assert such claims (*i.e.*, start and end dates for the respective revival periods), with express sunset provisions. Each statute provides that an otherwise

2

time-barred civil claim arising from an Article 130 offense may be asserted "no later than" the end date of the relevant revival period. Thus, each statute is, in relevant part, a statute of repose, providing all putative defendants the right to be free from suit thereafter.

The balance struck by the Legislature—in reviving this extremely broad array of otherwise time-barred claims while providing a limited revival window for their assertion—adhered to the New York Court of Appeals' guidance. The Court of Appeals has explained:

> [S]tatutes of limitations serve … the … objectives of finality, certainty and predictability…. Statutes of limitation not only save litigants from defending stale claims, but also express societal interest or public policy of giving repose to human affairs.

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 593 (2015) (cleaned up).[1] Thus, revival of time-barred claims is an "extreme exercise of legislative power" that "upset[s]" the above-described "strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371-72 (2020) (cleaned up).

---

[1] "Cleaned up" indicates omission of internal quotation marks, citations and/or footnotes, and/or slight alterations in internal punctuation such as removal of brackets in the original quotation.

3

For that reason, the Legislature "typically … provide[s] a *limited window* when stale claims may be pursued." *Id.* at 371 (emphasis added). That limited window itself helps ensure that the revival statute passes muster under the New York Constitution as a reasonable measure to address an injustice. *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 400 (2017) ("the legislature's revival of the plaintiff's claims for a limited period of time was reasonable in light of that injustice"). That is what the CVA and ASA did for sexual offense-based claims.

After the Legislature enacted the CVA but before it enacted the ASA, the New York City Council enacted its own revival statute in 2022 in the form of an amendment to the VGMVPL. Because this Amendment permits putative sex crime victims to file otherwise time-barred claims long after the ASA's and CVA's respective sunset windows, it directly conflicts with the latter statutes. That conflict is particularly stark as it pertains to claims asserted by alleged "adult survivors" like Plaintiff. The Legislature enacted the ASA after the New York City Council enacted the 2022 VGMVPL Amendment. The Legislature could have carved out the conflicting VGMVPL revival window in its own legislation, but did not.

For these and other reasons, set forth below, the Court should affirm the well-reasoned decision of the District Court.

4

## COUNTER-STATEMENT OF THE CASE

### I.     RELEVANT BACKGROUND

Plaintiff alleges that, in the fall of 2012, she was sexually assaulted by Defendants-Appellees Oren and Tal Alexander in Manhattan, and that Defendant-Appellee Oren Alexander planned, facilitated, and observed the purported rape. Plaintiff-Appellant's Brief ("Br.") at 3.

Plaintiff-Appellant's Brief describes these allegations—and additional allegations concerning Defendants' purported predatory behavior with other women—as fact. *Id.* at 4. At present, however, these are merely unproven, and contested, allegations.

What is uncontested is that the alleged conduct underlying Plaintiff's claimed injuries constitutes a sexual offense under Article 130. *See, e.g.*, N.Y. Penal L. §§130.35(1)(a) and (2)(a) (defining first degree rape to include vaginal or oral sexual contact by forcible compulsion). Thus, as discussed below, Plaintiff's claims fall squarely within the ambit of the ASA, CPLR §214-j.

### II.     THE DISTRICT COURT'S DECISION

This appeal comes from the District Court's grant of a motion to dismiss by Defendants-Appellees Alon and Oren Alexander, and of a motion for judgment on the pleadings by Defendant-Appellee Tal Alexander. The District Court held that New York State law preempts the VGMVPL's revival window on both field

5

preemption and conflict preemption grounds. Therefore, Plaintiff's claims, which were otherwise time-barred under the VGMVPL's then-applicable seven-year statute of limitations (N.Y.C. Admin. Code §10-1105), were not revived.

The District Court held that together the CVA and the ASA "constitute a comprehensive and detailed regulatory scheme" that "occup[ies] the field of revival of civil claims arising from violations of state sexual offense penal statutes." *Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 WL 268436, at \*4 (S.D.N.Y. Jan. 22, 2025). The District Court based its decision on three factors. *First*, the decision cited the statutes' comprehensive application to every type of civil claim, by every type of victim, against every type of defendant, for every type of injury. *Id.* at \*2. *Second*, the decision cited the statutes' unconditional application "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id.* at \*3. *Third,* the decision cited the legislature's "sequence of enactments." *Id.* Because the 2022 VGMVPL Amendment was enacted prior to the ASA's passage, in drafting the ASA, "[t]he state easily could have carved the VGMVPL out of the ambit of the ASA," but it did not. *Id.* The District Court also held that the 2022 VGMVPL Amendment was preempted because it conflicts directly with the ASA's revival window. *Id.*

6

## SUMMARY OF ARGUMENT

The District Court correctly held that the revival provision of the 2022 VGMVPL Amendment on which Appellant relies is preempted under the doctrines of both field preemption and conflict preemption.

Conflict preemption applies because the CVA and ASA provide a comprehensive framework to govern the field at issue: revival of otherwise time-barred civil claims for injuries arising from criminal sexual offenses. The comprehensive framework covers all possible plaintiffs, defendants, injuries, and types of claims, and states on its face that it trumps any provision of law to the contrary—including, therefore, the 2022 VGMVPL Amendment.

Plaintiff-Appellant resists this conclusion on the grounds that the State legislative history lacks any express statement of field occupation; that the CVA and ASA lack characteristics of other field legislation held to be field preemptive, such as creation of special commissioners or agencies, or direct control at the local level; and that the civil claims they cover do not fully overlap with those of the VGMVPL.

These arguments miss the mark. An intent to occupy the field need not be express, but may be implied from adoption of a comprehensive framework. Creation of a special commission or board is surely not the sole method of field occupation, or its *sine qua non*. Its defining feature is the comprehensiveness of the legislation's scope concerning the claims it addresses.

7

Separately, conflict preemption applies because the State's and City's revival schemes collide head-on. Plaintiff, for example, seeks to exempt herself from the ASA's express sunset provision, which afforded her a one-year window that opened on November 24, 2022 and closed on November 24, 2023. Instead, she seeks to claim the advantage of the City's competing two-year window that ran from March 1, 2023 to February 28, 2025, in order to bring civil claims that are untimely under, and foreclosed by, the ASA's sunset provision.

Plaintiff-Appellant argues that the two schemes merely "complement" each other and that, in any event, conflict preemption only applies where competing legislation curtails rights, of which defendants accused of sex crimes (the guilty and the innocent alike) have none. Both arguments demonstrably fail.

Direct conflict occurs because the CVA and ASA provide that civil claims arising from Article 130 offenses if not brought within their statutory limitations period may be temporarily revived, but may be brought "*not later than*" their sunset dates of August 14, 2021 and November 24, 2023, respectively. The 2022 VGMVPL Amendment, by contrast, permits plaintiffs to file such claims arising from Article 130 offenses well after those dates. In doing so, the Amendment conflicts with not only the "limited window" that permits the Legislature's upsetting of the strong public policy favoring finality, predictability, fairness to pass

constitutional muster, but also head-on collides with the express right of repose conferred by the Legislature on all defendants with respect to stale claims.

## ARGUMENT

Plaintiff-Appellant's claims accrued in the fall of 2012, when the alleged sexual assault occurred, and are subject to a seven-year statute of limitations. N.Y.C. Admin. Code §10-1105. Thus, unless revived by the 2022 VGMVPL Amendment, her claims expired in the fall of 2019, and having been filed on June 18, 2024, are time-barred. The District Court correctly concluded that the Amendment is pre-empted by New York State law, and therefore Plaintiff's failure to file her claim within the relevant State revival window bars her claim.

Preemption acts as an absolute limit on the constitutional home rule provision, which permits municipalities to adopt certain laws "so long as such local laws are 'not inconsistent' with the constitution or general state laws." *Police Benevolent Ass'n of City of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423 (2023) (citing N.Y. Const, art IX, §2(c)(10)). Preemption can take two forms: field preemption or conflict preemption. Both are present here.

Before addressing the merits of each separate ground of preemption, however, we first discuss the legislative history surrounding the legislative enactments that are relevant to the Court's review.

9

## I.  LEGISLATIVE HISTORY, STATUTES OF LIMITATIONS AND REVIVAL PROVISIONS

### A.  The Child Victims Act: CPLR §214-g

On February 14, 2019, New York State enacted the CVA (L. 2019 c. 11).  The CVA included a revival statute, CPLR §214-g (L. 2019, ch. 11, §12, eff. Feb. 14, 2019), which created a one-year claim revival period for actions arising from sexual offenses committed against minors where the then-applicable statute of limitations had expired before the effective date.  CPLR §214-g; A-191-93; *see also Doe v. Jones*, No. 22-CV-644, 2022 WL 2065032, at *2 (E.D.N.Y. June 8, 2022) ("the CVA extends the statute of limitations for civil actions brought by victims of child sexual abuse").

In enacting CPLR §214-g, the Legislature "identified a serious harm as well as a substantial barrier to timely filing by plaintiffs seeking redress – specifically that 'most survivors report or come to terms with their abuse' long after the abuse occurred."  *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 563 (E.D.N.Y. 2021) (quoting N.Y. State Assembly Mem. Supp. Legislation, reprinted in Bill Jacket for 2019 S.B. 2440, Ch. 11, at 7 (Jan. 29, 2019)).

The CVA provided such redress for alleged "child victims" of sexual offenses. Claims covered by the CVA included any sexual offense under Article 130 of the Penal Law that was perpetrated against a victim before his or her 18th birthday.  *See*

*Doe v. New York City Board of Education*, No. 21-CV-4332, 2023 WL 2574741, at *3 (E.D.N.Y. Mar. 20, 2023) (explaining the background of the CVA).

The lookback window opened on August 14, 2019, six months after the CVA was passed, and continued through August 14, 2020. The Act was later extended through August 14, 2021. *See* 2019 N.Y. Sess. Laws ch. 11, §3; *Oawlawolwaol v. Boy Scouts of Am.*, No. 21-CV-4714, 2021 WL 4355880, at *1 n.1 (E.D.N.Y. Sept. 24, 2021).

The legislative history reflects that the limited window for bringing revival claims was a central feature of the CVA's design. The Sponsor, Brad Hoylman, stated in the Committee Report for 2019 Senate Bill 2440: "Such revival *can only take place within a one year window* which commences six months from the effective date of the act." (Emphasis added).

The CVA provides in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child who was less than eighteen years of age … which is barred as of the effective date of this section because the applicable period of limitation has expired … is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

CPLR §214-g.

11

### B.     Adult Survivor Act: CPLR §214-j

On May 24, 2022, the New York State Legislature passed the ASA, which created a one-year lookback window for individuals to assert claims arising from sexual offenses that they endured as adults, and that would otherwise be time-barred by the statute of limitations.  L.2022, c. 203, §1.

As a District Court explained, "the Justification section of the committee report on S.B. No. 66, the bill that became the ASA, explicitly referred to the fact that adult survivors of sexual abuse had been subjected to injustice by 'New York's formerly insufficient statutes of limitations' and 'should be given the opportunity to seek civil redress against their abuser[s] ... in a court of law.'"  *Carroll v. Trump*, 650 F. Supp. 3d 213, 222 (S.D.N.Y. 2023).

The one-year revival period created by the ASA began on November 24, 2022, and closed on November 24, 2023.  During that period, adult survivors of sexual assault could sue their alleged abusers despite the expiration of the previously applicable statutes of limitations where injuries to a plaintiff arose from intentional or negligent conduct (1) that occurred when the plaintiff was 18 years or older and (2) which constituted a sexual offense under Article 130 of the Penal Law.

The legislative history again shows that the limited window for bringing revival claims was a central feature of the ASA's design.  As with the CVA, the Sponsor of the ASA, Mr. Hoylman, stated in the Committee Report for 2021 Senate

Bill 66:  "Such revival *can only take place within a one year window* which commences six months from the effective date of the act."  (Emphasis added).

The ASA's revival statute is essentially identical to the CVA, except that it covers plaintiffs alleging they were adult victims of a sexual offense.  It provides in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older . . . which is barred as of the effective date of this section because the applicable period of limitation has expired . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

CPLR §214-j.

## C.    The 2022 VGMVPL Amendment

In 2000, the City of New York enacted the VGMVPL, which created a private right of action for any victim of a crime of gender-motivated violence.[2]  N.Y.C. Admin. Code §§10-1101, 1102.  The VGMVPL requires that such claims are asserted within seven years after the alleged crime of violence motivated by gender

---

[2] The VGMVPL defines "crime of violence motivated by gender" as an act "that would constitute a misdemeanor or felony against the person ... [and] presents a serious risk of physical injury to another" that was "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."  N.Y.C. Admin. Code §10-1103.

occurred. *Id.* at §10-1105. Claims under the VGMVPL, which included rape and sexual assault, were revived by the CVA and ASA. *See, e.g., Breest v. Haggis*, 180 A.D.3d 83, 94 (2019) (claims that plaintiff "was raped and sexually assaulted are sufficient to allege animus on the basis of gender" and, thus, state a cause of action under the VGMVPL).

In January 2022, in between the passage of the CVA and the ASA, the New York City Council enacted the 2022 VGMVPL Amendment. The Amendment, in relevant part, created a two-year lookback window, effective as of March 2023, for victims of "gender-motivated violence" to file otherwise time-barred civil lawsuits.[3] N.Y.C. Admin. Code §10-1105. Under the revival provision of the 2022 VGMVPL Amendment, the VGMVPL revival period began on March 1, 2023, and closed on March 1, 2025. The purpose of the Amendment was to "give survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations and clarify that the law applies to such acts committed by parties who direct, enable, participate in, or conspire in a gender-motivated act of violence." Council of City of N.Y. Int. No. 2372-B, proposing amendment to N.Y.C. Admin. Code §10-1105(a) (Jan. 10, 2022); *see also* A-197-202.

---

[3] The amendment contained other provisions that are not relevant here.

14

## II.    FIELD PREEMPTION BARS THE REVIVAL PROVISION OF THE 2022 VGMVPL AMENDMENT

Field preemption arises where a state statutory scheme regulates a field comprehensively enough that it precludes a city from legislating in the same area. The State Legislature can occupy a field expressly or impliedly. *See DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001).

Intent to occupy a field to the exclusion of local legislation need not be expressly stated:  it can be inferred from the "enactment of a comprehensive and detailed regulatory scheme in a particular area, or from the nature of the subject matter being regulated and the purpose and scope of the state legislative scheme, including the need for state-wide uniformity in a given area." *Police Benevolent Ass'n of City of New York, Inc.*, 40 N.Y.3d at 423-24 (internal quotations omitted).

Where the State Legislature enacts such a scheme, a local government cannot "legislat[e] on the same subject matter unless it has received clear and explicit authority to the contrary." *DJL Rest. Corp.,* 96 N.Y.2d at 95 (internal quotations omitted); *see also Albany Area Builders Ass'n v. Town of Guilderland,* 74 N.Y.2d 372, 377 ("Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute."); *Mayor of City of New York v. Council of City of New York,* 4 Misc. 3d 151, 162 (Sup. Ct.

15

2004) (concluding a local law that addressed "virtually the identical activity regulated by" state law was preempted in its entirety).

As the District Court held, the CVA and ASA taken together "constitute a comprehensive and detailed regulatory scheme" and "confirms the legislature's intent to occupy the field." *Parker*, 2025 WL 268436, at *2-3. The State Legislature demonstrated its intent to occupy the field for the revival of time-barred claims arising from violations of Article 130 in five ways:

*First*, both the CVA and ASA specifically state that their revival provisions apply "[n]otwithstanding *any* provision of law which imposes a period of limitation to the contrary." CPLR §§214-g, 214-j (emphasis added). On its face, such language precludes further local regulation on the subject.

*Second*, the statutes are comprehensive. The CVA and ASA collectively revive every conceivable claim arising from conduct constituting a sexual offense under Article 130 of the New York Penal Law. Such offenses include every form of forcible or non-consensual sexual contact, ranging from first degree rape under Penal L. §130.35 to sexual misconduct and forcible touching under Penal Law §§130.20 and 130.52, as well as facilitation of a sexual offense (whether committed or attempted) with a controlled substance under Penal L. §130.90 (a class D felony)

16

and "sexually motivated felony" under Penal L. §130.91.[4]  They revive such claims for every type of alleged victim, child or adult; cover every type of "physical, psychological, or other injury or condition"; and apply both to direct perpetrators and third parties whose "intentional or negligent acts or omissions" caused the injury.  CPLR §§214-g, 214-j; *see also Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160, 165 (E.D.N.Y. 2023); *J.S.M. v. City of Albany Dep't of Gen. Servs.*, 83 Misc. 3d 1082, at *4-5 (N.Y. Sup. Ct. 2024).  Additionally, the CVA and ASA allow for lawsuits against all culpable "parties," including natural or artificial persons and individuals.[5]  Indeed, hundreds of child and adult sex-crime alleged victims have—collectively and separately—sued institutions, including New York's prisons, hospitals, school districts, and corporate employers under the CVA and ASA.  A-206-210.

---

[4] In all, Article 130 lists roughly 20 separate sexual offenses.  The ASA and CVA, however, do not limit civil claims to commission of these offenses, but extend to all claims alleging an injury arising from such offenses, including, for example, Human Rights Law, discrimination, and false imprisonment claims.  *See, e.g.*, *Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160, 165 (E.D.N.Y. 2023); *Segal v. N.Y. Mil. Acad.*, No. 21-CV-6872, 2023 WL 5211220, at *6 (S.D.N.Y. Aug. 14, 2023); *Wilkie v. Vill. of Hempstead*, No. 22-CV-920, 2023 WL 5952056, at *7 (E.D.N.Y. June 20, 2023).

[5] Plaintiff-Appellant appears to suggest that because the 2022 VGMVPL Amendment changed the *category* of potential defendants from "individual" to "party," this alters the preemption analysis.  Br. at 12.  It does not.

17

*Third,* there is an obvious "need for State-wide uniformity." *People v. Diack*, 24 N.Y.3d 674, 679 (2015). Because revival is "an extreme exercise of legislative power," the Legislature "act[s] with deliberation and clarity when upsetting the strong public policy favoring finality, predictability, fairness and repose served by statutes of limitation." *Regina Metro. Co.*, 35 N.Y.3d at 371-72 (citations omitted); *see also PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 564-65 (E.D.N.Y. 2021) (discussing length of revival window). Allowing an entirely different revival scheme for New York City upends that uniformity. Notably, in upholding the constitutionality of challenges to certain claim revival statutes, New York courts have underscored the need for uniform state-wide rules. For example, in *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 515 (1989), the New York Court of Appeals upholds the constitutionality of a one-year revival period for previously time-barred claims arising from latent defects in certain substances, explaining: "[T]he Legislature properly determined that it would be more fair for all plaintiffs to uniformly now have one year to bring their actions, rather than for the courts to begin drawing arbitrary lines transecting this area's shades of gray." Drawing lines, county-by-county, as Plaintiff-Appellant would have, is no less arbitrary.

*Fourth*, the State Legislature adopted the ASA four months after New York City adopted the 2022 VGMVPL Amendment. The State Legislature *could have* adopted a carve-out for the Amendment expressly (by so stating) or impliedly (by

18

excluding only more restrictive statutes of limitations); it chose not to. *Parker* 2025 WL 268436 at *3; ECF 26, at 10-11.

*Fifth*, the CVA and ASA implemented a robust framework for adjudicating revived sexual offense-related claims. For example, the Legislature established dedicated court parts to adjudicate CVA claims, required special training of judges, and provided trial preference for older abuse victims. *See* 22 NYCRR §202.72. The ASA also granted trial preference to ASA actions, and directed the courts' Chief Administrator to ensure revived actions were adjudicated in a timely manner. A-197-202.

## III. CONFLICT PREEMPTION BARS THE REVIVAL PROVISION OF THE 2022 VGMVPL AMENDMENT

Conflict preemption applies where "there is a head-on collision between" state and local law. *Lansdown Ent. Corp. v. New York City Dep't of Consumer Affs.,* 74 N.Y.2d 761, 764 (1989). A "local law [is] invalid pursuant to the conflict preemption doctrine" if "the State … specifically permits the conduct the local law prohibits or provide[s] 'some other indication *that deviation from state law is prohibited.*'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (emphasis added; quoting *Garcia v. New York City Dep't of Health & Mental Hygien*e, 31 N.Y.3d 601, 617-18 (2018)). "Put differently, conflict preemption occurs when a local law prohibits what a state law explicitly allows, or ***when a state law prohibits what a***

19

*local law explicitly allows*." *Matter of Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010) (emphasis added).

The revival windows created by the CVA and ASA prohibit what the 2022 VGMVPL Amendment explicitly allows. The CVA's two-year revival window opened on August 14, 2019, and closed on August 14, 2021. CPLR §214-g. The ASA one-year revival window opened on November 24, 2022, and closed on November 24, 2023. CPLR §214-j. The statutes provide that civil claims arising from alleged Article 130 offenses may be brought by putative child victims or adult victims "not later than" the sunset dates of the respective statutes and further provide that those sunset dates govern "notwithstanding any provision of law which imposes a period of limitation to the contrary."

By contrast, the 2022 VGMVPL Amendment allowed for the commencement of claims "not earlier than six months after . . . September 1, 2022," *i.e.*, March 1, 2023, and closure "not later than two years and six months after … September 1, 2022," *i.e.*, February 28, 2025. N.Y.C. Admin. Code §10-1105. The 2022 VGMVPL Amendment thereby "explicitly allows" VGMVPL claims to be brought almost a year and a half after the state law deadline for adults, and more than three and half years after the state law deadline for minors, even though the New York State Legislature provided that those state law deadlines were to apply

20

"notwithstanding any provision of law which imposes a period of limitation to the contrary."

As the District Court correctly concluded, "[t]he ASA thus is unambiguously inconsistent with the start date of the VGMVPL revival window." The ASA specifically permits conduct that the local law does not: bringing VGMVPL claims between November 24, 2022 and March 1, 2023. *Parker*, 2025 WL 268436 at *3. As the District Court further held:

> The ASA is inconsistent also with respect to the end date of the VGMVPL Revival Amendment window. *Per plaintiff's theory, the window to bring her claims would not close until March 1, 2025 — over 27 months after it opened*. That would create a revival period longer than either the ASA or VGMVPL revival windows standing alone. This would conflict with the ASA's express provision that "*notwithstanding any provision of law which imposes a period of limitation to the contrary*" eligible plaintiffs may file claims "*not later than* November 24, 2023." …. *Plaintiff's interpretation — in which state law opens the revival window and local law would close it — would conflict with the legislature's creation of such a limited window*.

*Id.* (emphasis added; cleaned up).

The head-on conflict is clear: the City legislation permits revival of civil claims arising from a sex crime for several months *after* the revival period legislated by the State for the very same type of civil claims has ended. Failure to give preemptive effect to State legislation, moreover, would directly contravene the express directive that the relevant claims be brought "not later than" the corresponding sunset dates of the CVA and ASA.

21

Plaintiff-Appellant attempts to argue away conflict preemption by claiming that the VGMVPL Amendment "does not curtail or take away a right or benefit expressly given by the state." Br. at 7. In fact, the opposite is true. Because the CVA and ASA expressly provide that no otherwise time-barred civil claims alleging sex crimes may be brought after, they are *statutes of repose*.[6] As such, they "protect a defendant's right, granted by the legislature, to be free from liability after a legislatively determined period of time." *Moreira v. Societe Generale, S.A.*, 125 F. 4th 371, 388 (2d Cir. 2025) (internal punctuation, citations, and emphasis omitted); *see also id.* at 389-90 (noting that the operative phrase "not later than" in the Sarbanes Oxley Act creates a "statute of repose") (citation omitted). Specifically, the CVA and ASA—which state that claims "may not be brought" and "may be brought not later than" the sunset date—include language of repose that confer an absolute right to be free from suit after the respective revival windows close. *See id.*

---

[6] A statute of limitations is not synonymous with a statute of repose. Statutes of limitations state that a plaintiff must file a lawsuit within a certain period or (absent tolling) may forfeit the remedy. Statutes of repose prohibit a plaintiff from filing a lawsuit after the date of repose, thus extinguishing plaintiff's right to bring suit. *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102-103 (2d Cir. 2004). But even if the revival window were treated as a statute of limitations, it would still operate to protect important defendants' rights that abrogation via the 2022 VGMVPL Amendment would curtail. *See Nussenzweig v. diCorcia, 9* N.Y.3d 184, 188, 878 N.E.2d 589 (N.Y. 2007) (*"statutes of limitations are designed **to spare . . . the citizen from being put to his defense** after memories have faded, witnesses have died or disappeared, and evidence has been lost") (internal citations and quotation marks omitted) (emphasis added).

The New York Court of Appeals has recognized that when a statute uses the words "no later than" it creates a period of repose. In *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 710 N.E.2d 250 (1999), the Court was asked to determine whether a Connecticut law regulating when certain statutorily-defined product liability claims could be brought was itself procedural or substantive. In analyzing the statute, the Court noted that a provision—that no such claim "may be brought against any party later than ten years from the date that the party last parted with possession or control of the product"—was a "provision[] of repose." *Id.* at 55 (internal quotations and citations omitted).

More recently, in analyzing the nature of the six-month "waiting period" preceding the CVA revival window, the Court stated: "The CVA's six-month waiting period does not embody a period of repose … nor is it designed to protect defendants," but rather was designed "to enable the court system to meet the special issues that the ensuing litigation was likely to generate." *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 107, 2025 WL 554454, at *2 (N.Y. Feb. 20, 2025) (internal quotations and citations omitted).

The end date of the filing period—which the *Jones* Court did not have occasion to address—presents the flip side of that holding. By stating that revival claims may be brought "not later than," the Legislature clearly did enact a "provision of repose" on the back end of the CVA and ASA. As Mr. Hoylman stated in the

23

Committee Reports for the respective Senate Bills, CVA and ASA revival claims may *only* be brought within their respective limited windows. Those ends dates serve to protect defendants from being hauled into court, and from prospective liability, after the statutorily determined period through the creation of "a limited window when stale claims may be pursued." *Parker,* 2025 WL 268436, at *4 (internal quotations and citation omitted) (emphasis in original). The 2022 VGMVPL Amendment's revival provision thus directly and impermissibly conflicts with the State legislation.

## IV. PLAINTIFF-APPELLANT'S ARGUMENTS FAIL

Plaintiff-Appellant's effort to resist both field preemption and conflict preemption relies upon cases that are not analogous and arguments that ignore the crux of the preemption argument.

### A. *Engleman v. Rolfe* and *Doe v. Gooding*

For example, Plaintiff-Appellant invokes *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021), and *Doe v. Gooding*, No. 20-CV-06569, 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022). However, those cases neither address the preemption question presented here nor support Plaintiff-Appellant's position on preemption.

In *Engelman*, the plaintiff filed a lawsuit in 2018, long before the CVA, ASA, or 2022 VGMVPL Amendment were enacted, and asserted a claim under the VGMVPL, passed in 2000, for which the seven-year statute of limitations applied.

24

The Court considered whether the VGMVPL's seven-year statute of limitations was preempted by CPLR §215(3)'s one-year limitations period for assault and battery. *Engelman* concluded that in passing CPLR §215(3), which is a general statute of limitations applicable to a broad range of torts, "New York State has not evinced an intent to occupy the field with respect to the statute of limitations in this matter." 194 A.D.3d at 30.

But that is not the issue here. This case concerns (1) whether New York State, in passing the CVA and ASA which created limited revival windows for previously expired sexual offense-related claims, evinced an intent to occupy the field of *revival actions arising from sex crimes*, and (2) whether, regardless, the VGMVPL Amendment directly conflicts with State legislation directing plaintiffs to file such revived claims "not later than" the limited revival windows created for that purpose. Because none of the relevant statutes existed in 2018, *Engelman* does not and could not address those issues. The same is true of *Doe v. Gooding*, which simply followed *Engelman* in holding that CPLR §215(3) did not preempt the VGMVPL seven-year statute of limitations. 2022 WL 1104750, at *2-3. The *Gooding* Court did not discuss (and did not need to consider) whether the CVA and ASA preempted the VGMVPL's claim revival statute because the plaintiff did not rely on a claim revival provision.

25

Indeed, in explaining why the VGMVPL's seven-year statute of limitations did not conflict with the general statute of limitations for assault and battery, in *Engelman*, the First Department justified its holding by stating: "we find that the legislative intent of the [VGMVPL] was to create a civil rights remedy or cause of action … *rather than to extend the statute of limitations for a particular class of assaults*." 194 A.D.3d at 32 (emphasis added). As the District Court aptly noted here, "Unlike the VGMVPL itself, the VGMVPL Revival Amendment was intended to extend the statute of limitations for a particular class of assaults. The CVA and ASA have exactly the same function. Per the reasoning in *Engelman*, these provisions preempt the VGMVPL Revival Amendment to the extent it purports to apply to the same conduct as the CVA and ASA." *Parker*, 2025 WL 268436, at *3 n.41.

## B. *Doe v. Black*

Plaintiff-Appellant relies upon *Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *1 (S.D.N.Y. Sept. 27, 2024), which reached a different conclusion than *Parker*, and held that the CVA did not preempt the VGMVPL.

An analysis of *Black*, however, reveals the limitations of that decision. *Black* focused solely on the preemptive effect of the CVA alone. The Court denied the defendant's motion to dismiss, holding that defendant "failed to demonstrate that the state legislature occupied the relevant field of legislation with the CVA or that the

26

VGMVPL Revival Statute conflicts with the CVA." *Id.* at *1. For example, *Black* failed to collectively consider the CVA and the ASA. *See Diack*, 24 N.Y.3d at 679-80 (holding that State's regulation in the field through a series of piecemeal laws demonstrated its intent to occupy the entire field).

*Black* also did not apply the proper tests to determine either field or conflict preemption. Thus, *Black* reasoned that "the CVA does not come close to enacting a comprehensive scheme" required for field preemption because the state "made no statements evincing a desire to fully control the issues of statutes of limitation in child sexual offense cases," *id.* at *4, 6; did not establish commissions or boards charged with enforcement of laws and regulations, as in other cases where field preemption was found to apply, *id.* at *5; and did no more than "extend[] the time for certain criminal and civil cases," *id.* at *6.

In so holding, however, *Black* did not grapple with the settled proposition that preemptive intent need not be explicit, but can be implied. *See Police Benevolent Ass'n of City of New York, Inc.*, 40 N.Y.3d at 423-24. *Black* did not analyze the comprehensive sweep of the CVA and ASA collectively with respect to plaintiffs, defendants, injuries, or causes of action. *Black* did not seek to give effect to the statute's directive that "*notwithstanding any other provision,*" revival claims arising from sex crimes "may be commenced not earlier than" the relevant window's opening date "and *not later than*" the relevant window's closing date. Finally, *Black*

27

treats field preemption as applicable only to very broad fields of economic activity; but the preemption doctrine contains no such requirement, and nothing prevents its application in a very narrow field, so long as the scheme adopted within that field is itself comprehensive. *See, e.g., People v. Cooper,* 49 Misc. 3d 132(A), at *2, 26 N.Y.S.3d 215 (N.Y. App. Term. 2d Dep't 2015) (New York State Sex Offender Registration Act impliedly preempted county law imposing notification requirement on sex offenders because state law provided a detailed and comprehensive scheme for monitoring and treating registered sex offenders); *Ba Mar, Inc. v. Cnty. of Rockland*, 164 A.D.2d 605, 613, 566 N.Y.S.2d 298 (2d Dep't 1991) (county ordinance establishing grounds upon which mobile home park operator could evict mobile homeowner was impliedly field preempted by state statutes that provided comprehensive framework for regulating mobile home parks).

*Black* held there was no conflict preemption simply because the State and City revival legislation "further the same goals," and because the 2022 VMGVPL Amendment "does not curtail or take away a right or benefit expressly given by the state." 2024 WL 4335453 at *6-7. That analysis also falls short in several respects.

*Black* pointedly ignores the significance of the CVA and ASA's "*not later than*" provisions. *Black* does not address the judicial backdrop to the CVA and ASA, or the important rights afforded by the limited revival windows, *i.e.*, that because revival statutes "upset[] the strong public policy favoring finality, predictability,

28

fairness and repose served by statutes of limitations," the Legislature always acts—and must always act—with "deliberation and clarity" when doing so. *Regina Metro. Co.*, 35 N.Y.3d at 372. Thus, "providing a *limited window* when stale claims may be pursued," *id.* at 371 (emphasis added), is not an incidental feature of the CVA and ASA, but rather a central component, as Mr. Hoylman's Committee Report shows.

For the same reason, *Black's*—and Plaintiff-Appellant's—claim that the VGMVPL did not curtail any right or benefit established by the ASA and CVA is incorrect. The VGMVPL curtailed both the social benefits of establishing an end date for the pursuit of stale claims,[7] and the right of defendants to finality and repose, which explains why, in Mr. Hoylman's words, sex crime-based revival claims may *only* be filed in the revival periods provided by the State legislation.

## C. Plaintiff-Appellant's Remaining Arguments Are Without Merit

Plaintiff-Appellant states that the CVA and ASA "cannot possibl[y] constitute a 'comprehensive regulatory scheme' because the ASA and CVA do not even contain stand-alone cause of action." Br. at 19. Plaintiff-Appellate does not explain

---

[7] *The New York Times* reported that the ASA alone prompted the filing of over 3,000 lawsuits within its one-year revival period. *See* https://www.nytimes.com/2023/11/27/nyregion/adult-survivors-act-lawsuits.html. NBC reported that 10,783 CVA claims were filed within its separate two-year revival period. *See* https://www.nbcnews.com/news/us-news/new-york-child-victims-act-lawsuits-remain-limbo-five-years-later-rcna204133.

why a "standalone cause of action" is material to the preemption analysis. If, for example, the State enacted comprehensive safety standards applicable to all gasoline stations, enforceable solely by state inspectors, the legislation could well preempt local law from imposing either more lenient, or more stringent, standards; nothing in this example requires a "standalone cause of action." In fact, that the CVA and ASA did not create standalone causes of action, but rather applied to revive the very cause of action Plaintiff brought here, *see, e.g., S. A. v. Bell,* No. 950279/2021, 2023 WL 8653131, at *1 (N.Y. Sup. Ct. Dec. 14, 2023) (discussing GMVL claim brought pursuant to CVA), only reinforces how these State statutes preempt the City's 2022 VGMVPL Amendment.

Plaintiff-Appellant also argues that preemption cannot apply because the ASA and CVA only regulate revival of civil claims arising from sexual violence (*i.e.*, claims arising from sexual offenses), whereas the VGMVPL encompass claims arising from non-sexual physical violence. That, too, is a *non-sequitur*. If, for example, the State enacted a comprehensive scheme that covered all forms of automotive transportation, it would not follow that the City could legislate in the same field with respect to automobiles—or adopt conflicting legislation vis-à-vis automobiles—simply because its legislation encompassed other forms of transportation, too, like subway trains, ferries, and bicycles.

Finally, Plaintiff-Appellant asks the Court to consider the after-the-fact affidavit of Mr. Hoylman, created solely for purposes of the *Black* litigation several

30

years after the enactment of the CVA and ASA. Settled law, however, holds that this litigation instrument is both inadmissible and non-probative. *See Cook v. Budget Rent-A-Car Corp.*, 502 F. Supp. 494, 499-500 (S.D.N.Y. 1980) (co-sponsor's statement "made six years after the passage of a statute" is not "persuasive legislative history with respect to that statute"); *Sibley v. KLM-Royal Dutch Airlines (Koninklijke Luchtvaart Maatschappij N.V.)*, 454 F. Supp. 425, 429 n.7 (S.D.N.Y. 1978) ("[T]he Court does not consider [state senator's] statement, solicited for purposes of this litigation, more than four years after the enactment of the statute, to be persuasive evidence of legislative intent.").[8] Indeed, in *Black*, Plaintiff-Appellant attempted to introduce the very same affidavit, and the Court struck it. This Court should similarly disregard it.[9]

_____

[8] *See also Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 132 (1974) ("[P]ost-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. Such statements represent only the personal views of these legislators, since the statements were (made) after passage of the Act.") (internal citations and quotations omitted); *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 411 n.11 (1979) (internal citations omitted) (post-enactment statements "by individual Members of Congress … cannot substitute for a clear expression of legislative intent at the time of enactment."); *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (statement made "*after* the statute became law" is "not a statement upon which other legislators might have relied in voting for or against the Act, but it simply represents the views of one informed person on an issue about which others may (or may not) have thought differently.").

[9] Mr. Hoylman's affidavit, further, conjectures only on the CVA and fails to address the ASA. As previously stated, it is the CVA *coupled with the ASA* that constitutes a comprehensive regulatory scheme and occupies the field regarding the

31

## **CONCLUSION**

For the reasons set forth above, the Court should affirm the District Court's decision and dismiss Plaintiff-Appellant's complaint.

Dated: New York, NY
        May 28, 2025

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By:    /s/    *Milton L. Williams*
        Milton L. Williams
        Deanna M. Paul
        250 Vesey Street, 27th Floor
        New York, NY 10281
        Tel: (212) 335-2030
        mwilliams@wmhwlaw.com
        dpaul@wmhwlaw.com

*Attorneys for Defendant-Appellee*
*Tal Alexander*

---

revival of claims stemming from Article 130 offenses, and thus Mr. Hoylman's affidavit is non-probative for this reason as well.

## <u>CERTIFICATE OF COMPLIANCE</u>

As an attorney at Walden Macht Haran & Williams LLP, I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Second Circuit Rule 32.1(a)(4) because this brief contains 7,509 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: New York, NY
      May 28, 2025

            /s/      *Milton L. Williams*
                  Milton L. Williams