25-487-cv
Parker v. Alexander

# United States Court of Appeals
# for the Second Circuit

August Term, 2025

(Argued: December 17, 2025     Decided: March 23, 2026)

Docket No. 25-487-cv

———————————————————————

ANGELICA PARKER,

*Plaintiff-Appellant*,

v.

TAL ALEXANDER, ALON ALEXANDER, OREN ALEXANDER,

*Defendants-Appellees*.

———————————————————————

Before:

JACOBS, CABRANES, and LOHIER, *Circuit Judges*.

This appeal raises an important question of New York law:  Whether two New York State laws, the Child Victims Act (CVA), N.Y. C.P.L.R. § 214-g, and the Adult Survivors Act (ASA), N.Y. C.P.L.R. § 214-j, preempt a New York City law, the Victims of Gender-Motivated Violence Protection Law (VGMVPL), N.Y.C. Admin. Code § 10-1105(a).  New York City's VGMVPL establishes a two-year revival window to permit victims of sexual and gender-based violence to pursue civil claims.  New York State's CVA and ASA establish earlier revival periods to permit victims to sue for similar conduct.  The Plaintiff asserted previously time-barred claims under the City's VGMVPL 2022 Amendments.  District courts in

this Circuit have come to conflicting resolutions as to whether the VGMVPL window is preempted by the claim-revival provisions in the State's CVA and ASA. Because no New York court has addressed this question, and because this appeal raises issues of importance to New York, including home rule authority under the New York State Constitution, we defer decision in order to certify the following question to the New York Court of Appeals: Whether the two-year revival window established by New York City's VGMVPL to permit victims of sexual and gender-based violence to pursue civil claims is preempted by the earlier revival periods set forth in New York State's CVA and ASA. **QUESTION CERTIFIED.**

Judge Jacobs concurs in a separate opinion.

> MICHAEL J. WILLEMIN (Brooke Payton, *on the brief*), Wigdor LLP, New York, NY, *for Plaintiff-Appellant*.
>
> MILTON L. WILLIAMS (Deanna M. Paul, *on the brief*), Walden Macht Haran & Williams LLP, New York, NY, *for Defendant-Appellee Tal Alexander*.

LOHIER, *Circuit Judge*:

This appeal[1] raises an important question of New York law: Whether the

two-year revival window established by New York City's Victims of Gender-

Motivated Violence Protection Law (VGMVPL or "the city law"), N.Y.C. Admin.

---

[1] This appeal was originally heard in tandem with another appeal, *Doe v. Black*, 25-564-cv, which raised substantially the same legal question. Because the defendant in *Doe v. Black* has filed a motion for relief that the district judge presiding over that proceeding lacked authority to grant pending our appeal, we remanded *Doe v. Black*, 25-564-cv, for further proceedings. *See* Fed. R. App. P. 12.1; *see also* Fed. R. Civ. P. 62.1; Fed. R. App. P. 47(b).

Code § 10-1105(a), to permit victims of sexual and gender-based violence to pursue civil claims is preempted by the earlier revival periods in New York State's Child Victims Act (CVA), N.Y. C.P.L.R. § 214-g, and Adult Survivors Act (ASA), *id.* § 214-j (collectively, "the state laws"). The appeal arises from a lawsuit in the United States District Court for the Southern District of New York (Kaplan, *J.*) brought by a victim of abuse. The Plaintiff asserted claims that indisputably would have been time-barred but for the New York City Council's 2022 amendments to the VGMVPL establishing a claim-revival window. The Defendants argue that the state laws preempt the city law.

Whether the city law must cede to the state laws at issue raises important issues involving the structure of New York's form of government, the relationship between New York State and its municipalities, and home rule principles reflected in the New York State Constitution. *See City of New York v. Patrolmen's Benevolent Ass'n of City of N.Y.*, 89 N.Y.2d 380, 390–91 (1996). Nor can we ignore the potentially significant implications of this appeal for the statewide remedial scheme for victims of sexual and gender-based violence in New York. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 544 (2d Cir. 2024), *certified question accepted*, 41 N.Y.3d 969 (2024), and *certified question*

3

*answered*, 43 N.Y.3d 337 (2025). Finally, as our concurring colleague notes, we are advised that a "whole bunch of state court cases are lined up awaiting our resolution of this question." Jacobs, *J.*, Concurring Op., *post* at 3. Because the appeal turns on issues of substantial policy and legal import to the State (and to the awaiting lower state courts), we defer decision and certify the following question to the New York Court of Appeals:

> Whether the two-year revival window established by New York City's Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1105(a), to permit victims of sexual and gender-based violence to pursue civil claims, is preempted by the earlier revival periods set forth in New York State's Child Victims Act, N.Y. C.P.L.R. § 214-g, and Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

## BACKGROUND

### I

In June 2024 Angelica Parker sued three brothers—Tal, Alon, and Oren Alexander—in New York state court under the VGMVPL, alleging that they had sexually assaulted her in 2012. After the Alexanders successfully removed the state action against them to federal court based on diversity jurisdiction, they moved to dismiss Parker's claims as time-barred, claiming that the ASA and CVA preempted the VGMVPL's revival window. The District Court accepted the defense argument that the ASA and CVA actually conflict with and therefore

preempt the VGMVPL's revival window. It also determined that the scope of the statutes indicated an intent on the part of the New York State legislature to occupy the field exclusively on the issue of revival windows for claims of sexual assault and other forms of gender-based violence. *Parker v. Alexander*, 779 F. Supp. 3d 361, 365–69 (S.D.N.Y. 2025).[2]

This appeal followed.

**DISCUSSION**

I

New York City's VGMVPL rose from the partial ashes of a federal law to protect women victimized by violence. As originally enacted, that law, the Violence Against Women Act of 1994 (VAWA), 42 U.S.C. § 13981, provided victims of gender-based violence a private civil right of action in federal court against their assailants. Six years later, however, VAWA's provision of a private federal right of action fell prey to *United States v. Morrison*, which struck the civil remedy provision as an unconstitutional transgression of Congress's power under the Commerce Clause and reserved to States and local governments the

---

[2] By contrast, the District Judge in *Doe v. Black*, 25-564-cv, rejected Black's state preemption argument and declined to dismiss Doe's complaint. *Doe v. Black*, No. 23-CV-6418, 2024 WL 4335453, at *3–7, 10–11 (S.D.N.Y. Sept. 27, 2024).

power to fashion a private remedy. 529 U.S. 598, 601–02, 613 (2000). Spurred by *Morrison*, New York City adopted the VGMVPL. *See* N.Y.C. Local L. No. 73 (codified at N.Y.C. Admin. Code § 8-902 (2000), and recodified as amended at N.Y.C. Admin. Code § 10-1102 (2018)) ("In light of the void left by the Supreme Court's decision, this [C]ouncil finds that victims of gender-motivated violence should have a private right of action against their perpetrators of offenses committed against them under the [A]dministrative [C]ode."); Comm. on Gen. Welfare & Comm. on Women's Issues, Rep. of Hum. Servs. Div. on Proposed Int. No. 752-A, N.Y.C. Council, 1998–2001 Sess., at 2 (Nov. 30, 2000) ("City Council Speaker . . . introduced . . . the Gender-Motivated Violence Protection Act[] to fill the gap left by the Supreme Court and to provide victims of domestic violence with an added measure of economic protection."). From the start, the VGMVPL has provided a private right of action for "any person claiming to be injured by an individual who commits a crime of violence motivated by gender." N.Y.C. Admin. Code § 8-904 (2000); *see also id.* § 10-1104. The right of action is subject to a seven-year period of limitation. *Id.* § 10-1105(a).

In 2019, nearly two decades after the VGMVPL was passed, the New York State Legislature enacted the CVA to, among other things, extend the statutes of

6

limitations and establish a revival window for civil and criminal cases involving sexual offenses against minors.  *See* N.Y. C.P.L.R. §§ 208(b), 214-g; N.Y. Crim. Proc. Law § 30.10(3)(f).  The initial version of the CVA established a one-year revival period from August 14, 2019 to August 14, 2020 for otherwise time-barred actions related to sexual abuse of minors.  2019 N.Y. Sess. Laws ch. 11 (S. 2440). In August 2020, however, the State Legislature extended the CVA's revival period by one more year, to August 14, 2021.  2020 N.Y. Sess. Laws ch. 130 (S. 7082).  So the statute now reads, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary[,] . . . every civil claim or cause of action . . . [arising from] conduct which would constitute a sexual offense . . . committed against a child less than eighteen years of age, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section[, February 14, 2019]. . . .

N.Y. C.P.L.R. § 214-g.  The CVA's revival period thus covers a period that is substantially earlier than the period of revival for claims under the VGMVPL.

The CVA's statutory twin, the ASA, applies to non-minor victims of specified sexual offenses.  Enacted in 2022, the ASA creates a revival window

allowing civil claims against alleged assailants to be brought between November 24, 2022, and November 24, 2023.  The statute reads, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary[,] . . . every civil claim or cause of action brought . . . [arising from] conduct which would constitute a sexual offense . . .  committed against such person who was eighteen years of age or older, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section[, May 24, 2022]. . . .

*Id.* § 214-j.

The question presented by this appeal arises from the passage of an amendment to the VGMVPL in 2022.  The amendment was prompted at least in part by a surge in complaints of domestic violence and other forms of gender-based violence following a drop in available in-person services at the beginning of the COVID-19 pandemic.  *See Hearing Before the Comm. on Gen. Welfare and the Comm. on Women and Gender Equity*, 2021 N.Y.C. Council, 2018–2021 Sess., at 84 (Nov. 29, 2021) ("As we are all aware, the COVID 19 pandemic has exacerbated already existing problems in our city.  This is especially true in the realm of domestic violence."); *see also* Comm. on Gen. Welfare & Comm. on Women & Gender Equity, Rep. of Hum. Servs. Div. on Proposed Int. No. 2372, N.Y.C.

Council, 2018–2021 Sess., at 4–6 (Nov. 29, 2021).  In response, the City amended the statute to give "survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations."  Comm. on Gen. Welfare & Comm. on Women & Gender Equity, Rep. of Hum. Servs. Div. on Proposed Int. No. 2372, N.Y.C. Council, 2018–2021 Sess., at 12 (Nov. 29, 2021). The final version of the amendment, N.Y.C. Local L. No. 21 (2022) (codified at N.Y.C. Admin. Code §§ 10-1104, 10-1105), revived previously time-barred claims and authorized plaintiffs to file lawsuits during a discrete period spanning from March 2023 to March 2025—notably later than that covered by either the CVA or the ASA, *see* N.Y.C. Admin. Code § 10-1105(a).  The city amendment provides:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

*Id*.

## II

On appeal, the Alexander brothers rely entirely on state law principles of conflict and field preemption to argue that the earlier state law revival windows of the CVA and ASA clearly preempt the VGMVPL's later window and bar the

9

Plaintiff's claims.  The Plaintiff responds, with equal confidence, that the state

laws clearly permit—or at least do not clearly foreclose—the City's later revival

period.  We respectfully disagree with our concurring colleague that "the

question practically answers itself."  Jacobs, *J.*, Concurring Op., *post* at 3.  Our

review of New York State's law on preemption leaves us less sure of the right

result either way on an important and pressing issue that lies entirely inside New

York's legal beltway.

A

"For a local law to be invalid pursuant to the conflict preemption doctrine"

under New York law, "the State must specifically permit the conduct the local

law prohibits or provide some other indication that deviation from state law is

prohibited."  *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quotation marks

omitted).  In our view, both sides raise forceful arguments rooted in the statutory

texts and history of the three statutes at play in this appeal.

The Defendants' arguments in support of state conflict preemption rest

largely on their reading of the CVA's and ASA's "notwithstanding" clauses, each

of which states, "[n]otwithstanding any provision of law which imposes a period

10

of limitation to the contrary." N.Y. C.P.L.R. §§ 214-g, 214-j. They contend that the different revival expiration dates[3] in the state and city laws clearly conflict.

To be sure, in *People v. Mitchell*, the New York Court of Appeals described a "notwithstanding" clause as a "verbal formulation frequently employed for legislative directives intended to preempt any other potentially conflicting statute." 15 N.Y.3d 93, 96–97 (2010). But the Court of Appeals has also "cautioned that reading conflict preemption principles too broadly risks rendering the power of local governments illusory." *Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018). So "the mere fact that a local law may deal with *some* of the same matters touched upon by state law does not

---

[3] Our concurring colleague characterizes these "disparate end dates" as differing "statutes of limitations." Jacobs, *J.*, Concurring Op., *post* at 2. New York City, as amicus curiae, asserts that the revival period end dates are not properly characterized as "period[s] of limitation." Amicus Br. 16–17. It points out that the revival provisions in the state and city statutes use the same permissive language, *see* N.Y. C.P.L.R. § 214-g (noting claims are "hereby revived" and plaintiffs "may" bring suits); N.Y. C.P.L.R. § 214-j (same); N.Y.C. Admin. Code § 10-1105(a) (same), in contrast with the mandatory and restrictive language that the statutes use to characterize the periods of limitation, *see* N.Y. C.P.L.R. § 213 (noting "actions must be commenced within six years"); N.Y. CPLR § 214 (noting "actions must be commenced within three years"); N.Y.C. Admin. Code § 10-1105(a) (noting actions "shall be commenced within seven years"). According to New York City, this distinction means that the "notwithstanding" clauses in the state laws, which displace only "a period of *limitation* to the contrary," *see* N.Y. C.P.L.R. §§ 214-g, 214-j (emphasis added), do not implicate the VGMVPL's revival window.

11

render the local law invalid." *Police Benevolent Ass'n of City of N.Y. v. City of New York*, 40 N.Y.3d 417, 425 (2023) (emphasis added) (cleaned up).

According to the Plaintiff, meanwhile, a fair reading of the statutory texts together with the legislative history of the VGMVPL, the CVA, and the ASA, signals that the disparate state and city revival windows are not in a head-on collision that qualifies for conflict preemption. In fact, the Plaintiff suggests, the VGMVPL's revival window advances rather than "inhibit[s] the operation of the State's general laws." *Garcia*, 31 N.Y.3d at 617 (quotation marks omitted); *see Vatore v. Comm'r of Consumer Affs.*, 83 N.Y.2d 645, 650–52 (1994) (reversing a preemption determination where "the local law would only further the State's policy interests").

It appears that the state and city laws *do* regulate slightly different conduct—a factor relevant to the preemption inquiry under New York law. *See Matter of Lansdown Ent. Corp. v. N.Y.C. Dep't of Consumer Affs.*, 74 N.Y.2d 761, 764 (1989) (considering whether the local law "render[s] illegal what is specifically allowed by State law" (quotation marks omitted)); *People v. Judiz*, 38 N.Y.2d 529, 532 (1976) ("[W]hile State law evinces an intent to cover[ this issue] quite broadly, . . . the city ordinance is aimed at the prevention of a particular type of

12

abuse."); *Engelman v. Rofe*, 144 N.Y.S.3d 20, 25–26 (1st Dep't 2021) (holding that the statute of limitations in the VGMVPL was not preempted by the shorter period in New York State's assault law, in part because "the legislative intent of the VGM[VPL] was to create a civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of limitations for a particular class of assaults"). The VGMVPL creates a right of action focused on crimes of "gender-motivated violence," a term that broadly includes domestic violence, intimate-partner violence, family violence, stalking and human trafficking, as well as sexual assault. Comm. on Gen. Welfare & Comm. on Women & Gender Equity, Rep. of Hum. Servs. Div. on Proposed Int. No. 2372, N.Y.C. Council, 2018–2021 Sess., at 2 n.2 (Nov. 29, 2021); *see Breest v. Haggis*, 115 N.Y.S.3d 322, 325–26, 329 n.10 (1st Dep't 2019) (observing that the definition of "crime of violence motivated by gender" in the VGMVPL was adopted "verbatim from VAWA"). By contrast, the CVA and the ASA focus on a decidedly narrower category of specified *sexual* offenses but do not themselves provide a right of action. *See Jones*, 43 N.Y.3d at 342; N.Y. C.P.L.R. §§ 214-g, 214-j (applying to "sexual offense[s] as defined in article one hundred thirty of the penal law").

13

B

The Defendants separately rely on the state doctrine of field preemption to contest the VGMVPL claims against them. New York's law on field preemption is not unlike federal law. *Compare Police Benevolent Ass'n*, 40 N.Y.3d at 423–24, *with Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012). The doctrine "prohibits a local government from legislating in a field or area of the law where the legislature has assumed full regulatory responsibility." *Torres*, 37 N.Y.3d at 265 (cleaned up). The CVA and ASA together, the Defendants say, create a "comprehensive and detailed regulatory scheme" for the revival of sexual assault claims that displaces local laws. *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001) (quotation marks omitted). Meanwhile, the Plaintiff responds that while the state laws reveal a statewide effort to revive claims for sexual offenses, they are not "so broad in scope or so detailed as to require a conclusion that all local law in the area . . . is preempted." *Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992).

The Defendants argue that the state laws occupy "the field of *revival actions arising from sex crimes*." Appellee's Br. 25 (emphasis in original). Based on our review, the Court of Appeals has never adopted as narrow a definition of the

14

occupied "field" as the Defendants invite us to embrace. *See Police Benevolent Ass'n*, 40 N.Y.3d at 424 (reviewing whether a state law "preempts the field of criminal procedure"); *New York State Club Ass'n, Inc. v. City of New York*, 69 N.Y.2d 211, 217–18 (1987) (reviewing whether a state law preempts "the field of antidiscrimination legislation"). Nor, the parties agree, has the Court of Appeals addressed the issue of preemption in the context of state and local revival statutes. Oral Arg. Tr. 8:5–9, 14:20–21. Yet the resolution of that issue has, as the parties also agree, significant state public policy implications for New York.

## CERTIFICATION

Second Circuit Local Rule 27.2 enables us to certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); *see also* N.Y. Const. art. VI, § 3(b)(9). In deciding whether to certify, we examine three questions: "(1) the absence of authoritative state court interpretations of [the law in question]; (2) the importance of the issue to the state, and whether the question implicates issues of state public policy; and (3) the capacity of certification to

15

resolve the litigation." *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 158 (2d Cir. 2012) (quotation marks omitted).

Each of these factors favors certification of the main question raised by this appeal. The Court of Appeals has yet to address whether the revival provisions of the CVA and ASA preempt the VGMVPL's revival window as a matter of either conflict preemption or field preemption. Neither has it addressed the CVA's and ASA's preemptive effects, if any, in other contexts. New York's general law on preemption is helpful but "insufficient to permit us to predict with confidence how the New York Court of Appeals would construe" that law "as [it] appl[ies] in this case." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 117 (2d Cir.), *certified question accepted*, 20 N.Y.3d 914 (2012), and *certified question answered*, 21 N.Y.3d 460 (2013). Meanwhile, the parties inform us that dozens of lower state court decisions await an appellate answer to the question before us.

Most importantly, the question presented implicates policies of genuine significance to New York State. These include interpretation of home rule principles in the New York State Constitution, N.Y. Const. art. IX, § 2, "the competing constitutional values involved when State legislation impinges on and overlaps with local concerns," *Patrolmen's Benevolent Ass'n*, 89 N.Y.2d at 390, as

16

well as "New York's policy of providing remedies to victims of . . . sexual abuse, a policy interest that was significant enough to warrant the extreme exercise of legislative power that is a claim-revival statute," *Jones*, 96 F.4th at 544 (quotation marks omitted).

Finally, resolution of the preemption question will determine the outcome of the appeal before us. *See Georgitsi Realty*, 702 F.3d at 159. If the VGMVPL's revival window is preempted by the CVA and the ASA under New York State law, then Parker's claims for relief will have to be dismissed as untimely. Accordingly, certification is appropriate. *See Carney v. Philippone*, 332 F.3d 163, 172 (2d Cir. 2003) ("New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken." (quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, we **CERTIFY** the following question to the New York Court of Appeals:

> Whether the two-year revival window established by New York City's Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1105(a), to permit victims of sexual and gender-based violence to pursue civil claims, is preempted by the earlier revival periods set forth in New York State's Child Victims Act, N.Y. C.P.L.R. § 214-g, and Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

17

In certifying this question, we understand that the New York Court of Appeals may reformulate or expand the certified question as it deems appropriate.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court.  This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification.  Decision is **RESERVED**.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.